DICKSON *v.* BACK.

[51 Pac. 727.]

WHERE CERTIFICATE OF ATTACHMENT MUST BE FILED.—Section 2418, Hill's Ann. Laws, providing that the recorder of conveyances of Multnomah County shall have control of * * * mechanics', laborers', material men's, and other liens, does not require a certificate of attachment to be filed with such recorder; the expression "other liens" being limited to those of the same class as those enumerated in the preceding clause.

IDEM.—Since the legislature abolished the office of county clerk of Multnomah County, and in lieu thereof created the offices of clerk of the circuit court, clerk of the county court, and recorder of conveyances, the certificate of attachment which is provided for by section 157, Hill's Ann. Laws, should be filed with the clerk of the court out of which the writ issued.

ATTACHMENT OF PERSONALTY—RELEASE OF JUDGMENT.—The attachment of sufficient personal property to satisfy the claim of the attaching creditor does not operate as a satisfaction of a judgment subsequently obtained in such action: *Wright* v. *Young*, 6 Or. 87, approved and followed. In Oregon an attachment neither confers any title on the sheriff or the attaching creditor, nor divests the debtor of any title; it simply gives the debtor a lien from the date of the levy.

RIGHTS OF ATTACHING AND MORTGAGE CREDITORS.—A creditor of an attachment debtor who, instead of securing a second attachment on real property covered by the first attachment, takes a mortgage thereon, is not entitled to have the lien of such mortgage held to be prior to that of the attachment, on the ground that more than sufficient personal property was also attached to pay the claim, for the levy of the attachment did not satisfy the claim.

REDELIVERY BOND—EFFECT ON ATTACHED PROPERTY.—An undertaking by the sureties on a redelivery bond to return to the sheriff the property attached or pay the value thereof to the full amount of any judgment which the creditor may obtain does not operate to

discharge the attached property from the custody of the law, or relieve it from the lien of the attachment, if it is in existence and can be identified: *Coos Bay Railroad Company* v. *Weider*, 26 Or. 453, approved.

MARSHALLING RIGHTS OF JUDGMENT AND MORTGAGE CREDITORS.— A creditor, having a judgment lien on two pieces of real estate, will not, in the absence of fraud or caprice on his part, be compelled, for the benefit of one having a subsequent lien on one of them, to satisfy his judgment out of the other; but the remedy of the junior creditor is to obtain an assignment of the judgment, thereby becoming subrogated to the rights of the other, and there, if necessary, apply to a court of equity which, upon a proper petition and showing, will enforce the subrogation.

IDEM.— A creditor who attaches personalty and real estate will not be compelled, for the benefit of another creditor who thereafter takes a mortgage on the real estate, to pursue his remedy against the sureties on a redelivery bond for the personalty, or against the sureties on the undertaking on appeal from the judgment into which the attachment had merged.

IDEM.— The holder of a judgment which is a lien upon two tracts of land, on one of which there is a mortgage, which was given after the lien of the judgment attached to the land, will not be compelled, as against the mortgagee, to exhaust the other tract before enforcing the judgment against the mortgaged land.

MARSHALLING— PRINCIPAL AND SURETY.— The principle of marshalling securities has no application to a remedy against a surety so long as the principal has property out of which the judgment for the payment of which the surety is liable can be satisfied.

From Multnomah: HENRY E. McGINN, Judge.

This is a suit by James Dickson against Seid Back and others to enjoin an execution sale of certain real property, and to foreclose the lien of a mortgage thereon. The facts are that on February 13, 1894, the defendant, J. L. Hartman, as receiver of the Northwest Loan & Trust Company, a corporation, commenced an action in the Circuit Court of Multnomah County against the defendant Seid Back and one William Dunbar to recover on their promissory note the sum of $2,500, and interest

thereon at the rate of 9 per cent. per annum from August 19, 1892; and, having sued out a writ of attachment therein, the then sheriff of said county, on the next day, by virtue thereof, seized a stock of goods, the property of Seid Back, which he appraised at $13,407.55, and at the same time attempted to attach Seid Back's interest in the following described real property, to wit: Lots 5 and 8 in block 185, and lots 6 and 7 in block 138, in Couch's Addition to the City of Portland; the W. ½ of lot 5 in block 26, lots 5 and 6 in block 119, and the E. 70 feet of the S. ½ of lot 2 in block 19, in said city; and lots 7 and 8 in McMillen's Addition to East Portland, and on the twenty-third of that month filed for record in the office of the clerk of the circuit court a certificate of the attachment of said real property. Immediately upon the seizure of said goods, Seid Back, as principal, and the defendants Too Chute and Moy Back Hin (the latter signing as Twin Wo Charley), as sureties, executed to the sheriff a redelivery bond in the usual form, whereupon said goods were delivered to Seid Back. On February 23, 1894, Seid Back was indebted to the plaintiff in the sum of $12,500, as evidenced by certain promissory notes, to secure the payment of which he and Quay Chow Back, his wife, since deceased, for that expressed consideration, executed to plaintiff what purported to be a warranty deed of said lots 5 and 8 in block 185, and lots 6 and 7 in block 138, in Couch's Addition to the City of Portland, and the W. ½ of lot 5 in block 26 in said city, which deed was deliv-

ered in escrow to one W. H. Adams. On April 3, 1894, plaintiff executed to Seid Back a defeasance, which recited that the deed was intended to secure said notes, upon the payment of which he agreed to reconvey said premises, whereupon Adams, by order of the grantor, delivered the deed to plaintiff, who on the next day filed the same for record. On September 29, 1894, Hartman obtained judgment in said action against the defendants, to satisfy which the real and personal property so attached was ordered sold. Seid Back appealed from said judgment, and the defendants Chin Chong Quie, Goon Dip, and Moy Back Hin, as sureties, executed an undertaking for the appeal and for a stay of proceedings. That judgment was affirmed *Hartman* v. *Back*, 28 Or. 580 (46 Pac. 1118), and, a mandate having been sent down, the lower court rendered judgment against Seid Back and his said sureties for the amount originally awarded, which was assigned to the defendant Jung Sam, who caused an execution to be issued thereon, by virtue of which the defendant George C. Sears, as sheriff of said county, levied upon the real property described in plaintiff's mortgage, and advertised it to be sold on November 6, 1895, prior to which plaintiff commenced this suit to foreclose the lien of his mortgage, and to enjoin the threatened sale, and in his complaint alleges, upon information and belief that the consideration for the assignment of the Hartman judgment was furnished by the defendants Seid Back, Moy Back Hin, Chin Chong Quie, Goon Dip, or some of them, previously liable for the

payment of said judgment, and that no attempt had ever been made by Hartman or Jung Sam to collect said judgment by a sale of the personal property so attached, or from the sureties on the redelivery bond, or on the undertaking for a stay of proceedings. The defendant Jung Sam, answering separately, and the defendants Moy Back Hin, Too Chute, Goon Dip, and Chin Chong Quie, jointly, after denying the material allegations of the complaint, allege new matters as defenses, which are put in issue by the replies. A trial was thereupon had, and the court found from the evidence the facts as hereinbefore stated, and that the defendant Thomas Mann had a lien on · a portion of said premises which was prior to all other liens, and, as conclusions of law, found that plaintiff's lien was superior to the liens of the various defendants, except that of Thomas Mann; that the sureties on the redelivery bond, and on the undertaking for a stay of proceedings on appeal, are solvent; and that Jung Sam should be required to collect his judgment from the defendants Seid Back, Moy Back Hin, Goon Dip, and Chin Chong Quie, or some of them, before proceeding against the property included in plaintiff's mortgage, a foreclosure of which was decreed; and the defendant Sears was enjoined from selling said premises under the execution issued on the Hartman judgment, from which decree Jung Sam appeals.

MODIFIED.

For appellant there was a brief over the names of *Thomas O'Day* and *Louis H. Tarpley*, with an oral argument by *Mr. O'Day.*

For respondent there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Mr. George H. Williams.*

MR. CHIEF JUSTICE MOORE, after making the foregoing statement, delivered the opinion of the court.

The court does not assign any special reason for its deduction that plaintiff's lien is superior to the liens of the various defendants, etc., but we infer the conclusion was drawn from the finding of fact that "No certificate of attachment was filed by the said sheriff in the office of the recorder of conveyances or of the clerk of the county court in said county." Section 151, Hill's Ann. Laws of Oregon, so far as necessary to an understanding of the question, provides that "If real property be attached, the sheriff shall make a certificate containing the title of the cause, the names of the parties, a description of such real property, and a statement that the same has been attached at the suit of the plaintiff, and the date thereof. Within ten days from the date of the attachment, the sheriff shall deliver such certificate to the county clerk of the county in which such real property is situated, who shall file the same in his office, and record it in a book to be kept for that purpose. When such certificate is so filed for record, the lien in favor of the plaintiff shall attach to the real prop-

erty described in the certificate from the date of the attachment, but if filed afterwards, it shall only attach, as against third persons, from the date of such subsequent filing." It would seem that the lien, as against third persons, would attach to the real property from the date of the attachment when the certificate is filed in the proper office within the prescribed time and that the only evidence admissible to establish the existence of the lien, as against such persons, is the certificate itself or a proper authenticated copy thereof (Drake on Attachments, 7th Ed., § 236a), but as against the owner and those who are in privity with him, the lien attaches to the real property from the time such persons have knowledge of the attachment. That is, third persons are bound by the notice which the certificate affords, while the owner of the fee and those who are in privity with him are chargeable with this notice, and also bound by such knowledge as they may have that the real property has been attached. It must be conceded that the voluntary conveyance by Seid Back to plaintiff created a privity of estate between them, but as there is no issue as to the latter's knowledge of the attachment, and since the deed was executed to him to secure a valid indebtedness, the consideration paid therefor was as valuable as that furnished by the attaching creditor; and, the equities being equal, the priority of their respective liens must depend upon the sufficiency of the notice which the certificate of the attachment affords.

The legslative assembly on February 17, 1887, in pursuance of the provisions of section 15, article VII, of the constitution, abolished the office of county clerk of Multnomah County, and created in lieu thereof the offices of clerk of the circuit court, clerk of the county court, and recorder of conveyances (Hill's Ann. Laws, §§ 2439–2455); and, the certificate required by the provisions of section 151 having been filed in the office of the clerk of the circuit court of said county, the important question for consideration is whether any lien upon the premises in question was created, as against plaintiff, by the attachment. The answer to this inquiry must depend upon a strict construction of the provisions of the statute applicable thereto; for, as was said by THAYER, J., in *Schneider* v. *Sears*, 13 Or. 69 (8 Pac. 841), "attachment proceedings are statutory, and, unless the statute is strictly pursued, no right is acquired under them." Counsel for appellant maintains that the sheriff, by filing the certificate of attachment in the office of the clerk of the circuit court, complied with the conditions imposed upon such officer by the statute, which abolished the office of county clerk of Multnomah County, and in support of his contention relies upon subdivision 8 of section 2414, Hill's Ann. Laws, which provides as follows: "It shall be the duty of the clerk of the circuit court, and clerk of the county court in Multnomah County, for the court of which he is the clerk, * * * (8) to exercise the power and perform the duties conferred and imposed upon him, as the clerk of

such court, by this act or other law, or which is now required of or performed by the county clerk of Multnomah County as clerk of such court." Counsel for respondent, however, maintains that the certificate of attachment should have been filed and recorded in the office of the recorder of conveyances of said county, and claims that the duty so to preserve the evidence of the lien is enjoined by section 2418, Hill's Ann. Laws, which, so far as necessary to this case, provides as follows: "The recorder of conveyances in Multnomah County shall have the care, custody, and control of the books, papers, and files and records of contracts, powers of attorney, deeds, mortgages of both real and personal property, and of mechanics', laborers', and material men's, and other liens, in Multnomah County."

The point insisted upon by the latter proceeds upon the theory that an attachment of real property, when perfected, becomes a lien thereon, and that the words "other liens," as used in the section relied upon, indicate that the certificate of attachment should have been delivered to the recorder of conveyances of said county, and recorded in a book kept by him for that purpose, and that, Hartman having failed to comply with this requirement, no lien ever attached to the premises in question. It becomes necessary to ascertain, if possible, the legislative intent, as manifested by the adoption of the words "other liens," as used in the language above quoted. One of the rules of statutory construction is predicated upon the maxim, *Ejusdem*

32 Or.—15.

*generis;* that is, when general words follow particular ones, the former are limited in their meaning to the same class of persons or things enumerated in the preceding clause: Bishop on Statutory Crimes (2d Ed.) § 245 *et seq.;* 17 Am. & Eng. Enc. Law (1st Ed.) 278, and notes. While the rule is not inflexible, we think it is manifest that the words "other liens" refer to such liens only as are given by the statute to those persons who have increased the value of the real property of another, either by expending their labor upon, or furnishing materials to be used in such a manner as to enter into and become a part of, the estate sought to be charged therewith; and this deduction is strengthened when the section relied upon is read in connection with section 2432, Hill's Ann. Laws, which is a part of the same act, and provides as follows: "Contractors, mechanics, artisans, machinists, builders, lumber merchants, laborers, and others claiming liens upon property in Multnomah County, shall file their claims of such lien with the recorder of conveyances in Multnomah County, in the same manner and with like effect as now prescribed by law for filing them in the county clerk's office of Multnomah County." We do not think it is declared in the statute, nor can it reasonably be inferred from the words "other liens," that the certificate should have been delivered to the recorder of conveyances of Multnomah County, or recorded in any book kept in his office, in order to perfect the lien of the attachment.

Nor do we think that much light is shed upon the subject by section 2454 of the Code, which provides, in effect, that in case of doubt as to the duties required to be performed by either the clerk of the circuit court, clerk of the county court, or recorder of conveyances in Multnomah County, such duty shall be done and performed by the clerk of the county court, and the same shall be deemed to appertain to the duties of his office. The statute nowhere indicates by whom the doubt is to be entertained, so as to impose the duty resulting from such mental condition, upon the clerk of the county court. Counsel for Hartman probably had no doubt as to whom the certificate of attachment should have been delivered to, and therefore returned it to the clerk of the circuit court. It would also be inferred from the arguments of respondent's counsel that he entertained no doubt in relation to the officer whose duty it is, under the statute, to record the certificate of attachment, and hence he would have delivered the same to the recorder of conveyances; and since, in each instance, the parties, although they reached different conclusions, harbored no doubt in the matter, it would necessarily follow that neither was or would have been obliged to deliver such certificate to the clerk of the county court; and shall it be said that, because we may be in doubt as to the officer upon whom the duty devolves, counsel are in error in their conclusions, and therefore no lien attached to the real property in question? If the contention of appellant's counsel be correct, then it follows that

the sheriff must file the certificate of attachment in
the office of the clerk of the court from which the
writ emanated, the effect of which would be to
require the clerks of the circuit and county courts
of Multnomah County to keep a book in each office,
in which to record certificates of attachment, there-
by imposing upon those who are compelled to search
the records of title to real property the duty of ex-
amining the books of each office to ascertain if any
such property were subject to the lien of an attach-
ment. But this cannot be regarded as an unreason-
able requirement; for it may be said, by way of
argument and illustration, that the lien of a judg-
ment attaches to all the real property of the judg-
ment debtor situate in the county in which the
judgment is rendered, upon docketing the same in
the judgment docket, and, upon filing in the office
of the county clerk of any county in this state a
certified transcript of the original docket, the judg-
ment becomes and remains a lien upon all the real
property of the judgment debtor within the county
or counties in which the same is docketed, during
the time an execution may issue thereon: Section
269, Hill's Ann. Laws. "The records of the circuit
and county courts are, a register, journal, judgment
docket, execution docket, feebook, jury-book, and final
record": Hill's Ann. Laws, § 569. It would thus
appear that in Multnomah County, since the office
of county clerk was abolished, the clerk of the circuit
court and the clerk of the county court are each re-
quired to keep a judgment docket, thereby necessitat-
ing an examination of the records of both offices to

ascertain if real property situated in said county is affected by the general lien of a judgment; and, since such a course is necessary in case of a judgment lien, it is not unreasonable to suppose that the legislative assembly intended that persons looking up title to real property should be compelled to examine the records in the offices of the clerk of the circuit and county courts, to ascertain if the property which is the subject of search is burdened with the specific lien of an attachment. While the question is not entirely free from doubt, we think that a reasonable construction of subdivision 8 of section 2414 requires the sheriff of Multnomah County, when he has attached real property by virtue of a writ issued in an action instituted in the circuit court of that county, to deliver the certificate of attachment to the clerk of the court out of which the writ issued, to be by him recorded in a book kept in his office for that purpose; and, the certificate in the case at bar having been delivered to the proper officer, the lien attached to the premises in question, and, being prior in time, is superior in right to plaintiff's mortgage lien.

It is contended by counsel for respondent that the attachment of sufficient personal property of Seid Back to satisfy Hartman's demand was, as to his client, a payment of any judgment that creditor might obtain; that the redelivery bond was a direct obligation to pay such judgment, and operated to discharge the attachment; and that equity, in any event, should compel Jung Sam, as the assignee of Hartman, to exhaust all other security

that he may have before proceeding against the
real property so mortgaged to Dickson. It has
been held in some states that the levy of an execu-
tion upon sufficient personal property of the judg-
ment debtor to satisfy the demands of the writ op-
erates, as against a subsequent judgment creditor
or innocent purchaser, as a discharge of the lien
of the judgment under which the execution was is-
sued: *Barber* v. *Reynolds,* 44 Cal. 519; *Wood* v. *Tor-
rey,* 6 Wend. 562; *People* v. *Onondaga Common Pleas,*
19 Wend. 79. Such a levy is deemed, by fiction of
law, to be the foundation of a new title, which is
vested in the officer making the levy for the pur-
pose of satisfying the judgment upon which the
writ issues; and hence, when sufficient personal
property has been levied upon to satisfy the de-
mands of the execution, it operates, in theory, to
satisfy the judgment, but only to the extent that
if, by the neglect of the officer making the levy,
the property is lost or destroyed, the lien of the
judgment is thereby discharged: 2 Freeman on
Executions, § 269; *Brown* v. *Allen,* 3 Head, 429;
*Ladd* v. *Blunt,* 4 Mass. 403. Mr. Crocker, in his
work on Sheriffs (3d Ed.), at section 440, in speak-
ing upon this subject, says: "A mere levy, even
upon sufficient personal property to pay the execu-
tion, never amounts to a satisfaction of the execu-
tion. It but suspends the other remedies to the
plaintiff. It may be overreached by some other
lien, or abandoned for the debtor's benefit, or de-
feated by his misconduct, and then such levy is no
satisfaction of the judgment or execution. There

can be no satisfaction of the execution where the defendant has neither paid the debt, nor lost his property by the levy." To the same effect, see *Wright* v. *Young*, 6 Or. 87. How can it be said, under this rule, that the attachment of sufficient personal property to satisfy the creditor's demand operates to discharge any judgment he might obtain? The attachment of such property vests in the attaching officer only a special interest therein, which he holds, as a lien only, to apply in satisfaction of any judgment the plaintiff may ultimately obtain in the action; and, the debtor not having been deprived of title to the personal property so attached, the officer is powerless to make any transfer under such proceeding. But, if it be assumed that the attachment of more than sufficient personal property to satisfy the demands of the attaching creditor rendered the officer making the same liable to the attachment debtor for any damages the latter might sustain in consequence of an excessive levy, the right of action accrues only to the party injured, and for that reason a third person cannot take advantage of the officer's wrong: Drake on Attachment, § 201; *Merrill* v. *Curtis*, 18 Me. 272. If plaintiff considered that the sheriff had seized more of Seid Back's goods than were necessary to satisfy the amount of Hartman's demand he could, doubtless, have secured the subsequent attachment thereof; but, having chosen to adopt a mortgage of the debtor's real property, a court of equity should not aid him because he failed in the election of his securities.

The sureties on the redelivery bond undertook to return to the sheriff the goods of Seid Back which had been attached, or to pay the value thereof to the full amount of any judgment that Hartman might obtain in his action against the principal, whereupon the possession of the attached property was surrendered to Seid Back; but this did not operate to discharge the goods from the custody of the law, nor serve to relieve them from the lien of the attachment, if they are in existence and can be identified: Waples on Attachment (2d Ed.), § 747; *Kohn* v. *Hinshaw*, 17 Or. 308 (20 Pac. 639); *Drake* v. *Sworts*, 24 Or. 198 (33 Pac. 563); *Coos Bay Railroad Company* v. *Wieder*, 26 Or. 453 (38 Pac. 338).

Before judgment was obtained in the Hartman action, however, Seid Back had disposed of all the goods so attached, and had become (so it is alleged) insolvent, thereby rendering the sureties liable on the redelivery bond; but this did not authorize the sheriff to levy on their property until an action for breach of the condition of their undertaking had been prosecuted to judgment; for, the redelivery bond being ancillary only, the sureties by signing the same did not become parties to the Hartman judgment, and in an action instituted against them upon the undertaking, it would be a valid defense that the property for which the undertaking was given did not, at the execution of the writ of attachment, belong to the defendant against whom it was issued: Hill's Ann. Laws, §155. It is true that this court, in the case of *Hartman* v. *Back*, found that the defendant, as principal, and Chin Chong

Quie, Goon Dip, and Moy Back Hin, as sureties, executed an undertaking on appeal and for a stay of proceedings therein, and, affirming the judgment, directed the lower court to render judgment against them for the sum of $3,037.50, and interest at nine per cent. per annum from October 1, 1894, and the costs and disbursements upon the appeal; and, the cause being remanded, judgment was accordingly entered, which was assigned to Jung Sam, who caused an execution to be issued thereon, by virtue of which the sheriff levied upon the property embraced in plaintiff's mortgage. This assignee could have caused the execution to be levied upon the property of either of the sureties on the undertaking on appeal and for a stay of proceedings, but he chose to apply the proceeds of a portion of the principal's real property, which had been attached, to the satisfaction of his judgment; and the sheriff, obeying his directions, levied upon the property so mortgaged to Dickson; but in doing so the latter was not injured, for, having taken his mortgage with notice of the lien of the attachment, which has ripened into a judgment, he should, in equity, if he desires to protect his rights, be compelled to take an assignment of the Hartman judgment, and thereby, being subrogated, put himself in a position to preserve and enforce the lien thereof. Any other conclusion must necessarily subject the sureties on an undertaking for an appeal and for a stay of proceedings to the mercy of the principal, unless they are indemnified for the liability assumed, for if the mere levy on sufficient personal property to

satisfy the creditor's demand relieves the real property of the judgment debtor from the lien of the judgment, he could, after perfecting an appeal and obtaining a stay of proceedings, transfer such real property and thus defeat the lien of the sureties which they might obtain by procuring an assignment of the judgment, should they, by reason of the misappropriation or destruction of the personal property, be compelled to satisfy the same, a result, which, if tolerated, would tend to discourage persons from becoming sureties on appeal and for a stay of proceedings, and thereby deprive judgment debtors of a valuable statutory right. The surety's right to subrogation arises when he assumes that relation, by executing the obligation; and, if he is compelled to discharge the judgment rendered against his principal, his remedy to enforce the lien thereof is a part of the original contract: 24 Am. & Eng. Enc. Law (1st Ed.), 194; *Peirce* v. *Higgins*, 101 Ind. 178.

Jung Sam having a judgment against Seid Back and William Dunbar and the sureties on the undertaking on appeal and for a stay of proceedings, and a lien on two tracts of real property as security therefor, and Dickson having a decree against Seid Back and a lien on one of said tracts only, will a court of equity marshal the securities, and compel Jung Sam to apply the proceeds of the real property upon which Dickson has no lien, and enjoin the judgment creditor from selling upon execution the premises so mortgaged to plaintiff, until such application is made? "The general prin-

ciple," says Mr. Justice STORY in his work on
Equity Jurisprudence (section 633), "is that if one
party has a lien on or interest in two funds, for
a debt, and another party has a lien on or in-
terest in one only of the funds, for another debt,
the latter has a right in equity to compel the for-
mer to resort to the other fund, in the first in-
stance, for satisfaction, if that course is necessary
for the satisfaction of the claims of both parties,
whenever it will not trench upon the rights, or
operate to the prejudice, of the party entitled to
the double fund." In *Knott* v. *Shaw*, 5 Or. 482, it
was held that where the person against whom a
judgment has been rendered conveys a part only
of his real property which is affected thereby, the
purchaser thereof has an equitable right to have
the judgment discharged out of the residue of the
debtor's property before a resort can be had to
the real property so conveyed. It is very evident,
however, that this rule can have no application
to real property mortgaged after a judgment has
become a lien thereon; for a mortgage, under our
statute, is nothing but a lien, which is discharged
by payment of the debt secured thereby, and this
satisfaction may be obtained as well by the sale
of one tract of the debtor's real property as by
another; and hence, if the premises mortgaged be
discharged from the lien thereof by a sale on exe-
cution under a prior judgment, the mortgagee's
lien in equity still subsists, and by marshaling the
securities, or by subrogation, attaches to other real
property of the common debtor. In *Hall* v. *Steven-*

*son*, 19 Or. 153 (20 Am. St. Rep. 803, 23 Pac. 887), the plaintiff sought to foreclose a mortgage which .embraced several tracts of land; and it appeared that the defendants Christy and Wise had a judgment against one of the mortgagors, which constituted a subsequent lien on a part of said premises, in view of which it was held that the land not subject to the judgment lien should be first sold and the proceeds thereof .applied to the satisfaction of plaintiff's mortgage, and the residue of the proceeds of the judgment debtor's interest, if any, be applied to the payment of Christy and Wise. In that case the court was asked to foreclose the lien upon all the premises included in the mortgage, and this gave it jurisdiction of the double fund; and, the judgment creditors being parties, the securities were marshaled in the interest of, and to protect the lien of, the latter; but in doing so the court did not deprive the plaintiff of any of his substantial rights, and its decree directing separate sales made it possible for the subordinate lien creditors to redeem such portions of the mortgaged premises as they were interested in.

"A court of equity," says HENDERSON, J., in *Jones* v. *Zollicoffer*, 11 Am. Dec. 795, "will restrain a person in the capricious exercise of his rights; for benevolence becomes a duty enforced by courts of justice, when its exercise is in no way prejudicial to the party, and a want of it is injurious to another. Thus, when a person may get satisfaction out of either of two funds, and another can

get satisfaction only out of one of them, and they are both equally convenient and accessible to him who may get satisfaction out of either, and nothing but mere caprice governs him in making the selection, there equity will restrain him to the fund not onerated by the claims of the other; but if convenience, and not caprice, is his motive, the most that equity does is to substitute the disappointed claimant to his rights.  The first is rarely done, for it is a matter of extreme delicacy to restrain a person· in the exercise of a legitimate right, in favor of one who has no claim upon him by contract, and whose only connection with him arises from being interested in the same common fund; yet where there is a fraud, moral or legal, or mere caprice, he will be restrained.  The latter, to wit, substitution, is very frequently done, and is the foundation of marshaling assets in favor of legatees and simple-contract creditors, and applies in cases where there is neither fraud nor caprice. It is sufficient that his fund has been exhausted by one who had a double means of satisfaction.  In *Delaware & Hudson Canal Company's Appeal*, 38 Pa. St. 512, four judgments having been rendered against, and become general liens upon the real property of, one Thomas, he thereafter mortgaged to the canal company a portion of the land affected by these judgments; and the premises so mortgaged having been sold on execution issued on these judgments, and the proceeds thereof brought into court, it was decreed that the lien of the canal company which had been discharged by such

sale should extend to and embrace the other real property of the judgment debtor which had not been sold. STRONG, J., in rendering the decision of the court, says: "It is an equally plain principle of equity that, if the paramount creditor resorts to the doubly-charged fund or property, the junior creditor will be substituted to his rights, and will be satisfied out of the other fund, to the extent to which his own may have been exhausted. This is an equity against the debtor himself; that the accidental resort of the paramount creditor to the fund doubly incumbered shall not enable him to get back the other fund, discharged of both debts. And, being an equity against the debtor, it is, of course, such against his subsequent judgment creditors, who have no greater rights than their debtor had at the time their judgments were entered." The rule seems to be that a paramount judgment creditor will not be restrained from enforcing his strict legal right, and selling upon execution such tract of the debtor's real property as he may select for the satisfaction of his judgment, unless in doing so he is governed by caprice, or prompted by malice to deprive the subsequent lien claimant of his security, but that in marshaling the securities of the common debtor the court will decree a subrogation, upon proper application therefor, unless both funds are directly before the court, or under its control, so that it may make a proper appropriation thereof to all parties, in the order to which they are entitled: 14 Am. & Eng. Enc. Law (1st Ed.), 693; *Aldrich* v. *Cooper*, 2 White & T. Lead.

Cas. Eq. 228, and notes at page 262; *Gilliam* v. *McCormack*, 85 Tenn. 597 (4 S. W. 521, 25 Central Law Journal 225, and note).

It does not appear that Jung Sam was actuated by any motive that would cause a court to enjoin him from enforcing the remedy given by statute for the collection of his judgment, nor that Seid Back furnished the means that enabled him to obtain from Hartman an assignment of the judgment; and for these reasons the injunction must be dissolved.    The principle of marshaling securities can have no application to the remedy against a surety, so long as the principal has property out of which the judgment, for the payment of which the surety is liable, can be satisfied.    ROBINSON, J., in *Re Assignment of Hobson*, 81 Iowa, 392 (11 L. R. A. 255, 46 N. W. 1095), in discussing this question, says:   "In the absence of some special equity, it is not applicable to a case where one of the funds is the property of a surety.   If a surety be compelled to pay the debt of his principal, he becomes his creditor, by virtue of the payment, with the right of subrogation.   In this case, appellant's equities are not superior to the rights of the sureties, and the principal will not be required to exhaust their property before proceeding against the property of the principal debtor."   In the case at bar, Jung Sam has a prior lien, and if Dickson would seek to protect his rights and avail himself of this security, so as to enforce the lien against the property of Seid Back, which is not embraced in his mortgage, it is incumbent upon plaintiff to

obtain an assignment of the judgment, and thereby become subrogated to the rights of the paramount lien claimant. It does not appear that any effort has been made to procure such an assignment, or that Jung Sam refuses to make it, or that such relief is demanded in this suit; and, in the absence of these necessary allegations and prayer, this court is powerless to decree a subrogation. The decree will therefore be modified in so far as it compels Jung Sam to collect his judgment from other sources before he is permitted to sell upon execution the premises so mortgaged to plaintiff, but in all other respects it is affirmed.

MODIFIED.

Decided October 25, 1897; rehearing denied.