Decided 4 December, 1905.

## OLIVER v. WRIGHT.

83 Pac. 870.

HUSBAND AND WIFE—TENANCY BY ENTIRETY.

1. A conveyance of real property to a husband and wife creates a tenancy by the entirety, and upon the death of either spouse the survivor takes the whole estate.

"PROPERTY" UNDER ATTACHMENT STATUTE.

2. Is the inchoate right of survivorship of a tenant by the entirety such "property" as can be levied upon and sold under Section 296, B. & C. Comp.?

LIEN OF ATTACHMENT—MERGER IN JUDGMENT.

3. Where a judgment quasi in rem is rendered against attached property, directing it to be sold to satisfy the debt of the attaching creditor, the right which

the latter has secured by the seizure under the writ of attachment becomes merged in the lien of the judgment.

NATURE AND EXTENT OF JUDGMENT LIEN.

4. A judgment for plaintiff in an attachment action becomes, when docketed, a lien upon all the real property of the judgment debtor, but does not establish any specific interest in his land.

EFFECT OF CONVEYANCES OF LAND SUBJECT TO JUDGMENT—ORDER OF
SALE UNDER EXECUTION.

5. Where all the land subject to a general judgment lien is conveyed by the judgment debtor in separate tracts, and to different persons, the judgment creditor, if he is obliged to resort to an execution, must satisfy his judgment by a sale of the tracts conveyed in the inverse order of their alienation: *Dickson* v. *Back*, 32 Or. 217, distinguished.

From Union: SAMUEL WHITE, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Turner Oliver to enjoin the sale of certain real property on execution. The facts are that the defendant Joseph Wright, as plaintiff, commenced an action April 4, 1892, in the circuit court for Union County against Mary A. Boothe and Mary C. Walling as defendants, and, having sued out an attachment, he caused to be seized all the interest of either of such defendants in or to block 21 in the Town of Union, and 42 days thereafter he secured a judgment against them for the sum of $247, with interest at 10 per cent per annum, $40 attorney's fees, and the costs and disbursements, and an order was made directing that the real property so attached be sold to satisfy the judgment, a proper docket entry thereof having been made on the day the judgment was given. At that time Mary A. Boothe and her husband, Luke J. Boothe, were the owners in fee of an undivided seven eighths of such block 21, and also of all the following described premises: Commencing at a point 60 feet south of the southwest corner of block 23 in the Town of Union, thence south 200 feet, thence east 210 feet, thence north 200 feet, and thence west 210 feet to the place of beginning, the latter tract being known as the Nodine Block. The marital relation existing between Mr. and Mrs. Boothe continued until November 4,

1892, when he died in that county, leaving her surviving. Mrs. Boothe, in consideration of $1,800, executed to the plaintiff, Turner Oliver, August 12, 1893, a warranty deed for the undivided seven eighths interest in block 21 in that town; and, the deed having been duly recorded on that day, he has ever since been in possession of the premises, claiming to be the owner thereof in fee. Mrs. Boothe, on November 20, 1894, for the expressed consideration of $1, executed a bargain and sale deed of an undivided one half interest in the Nodine Block to R. Eakin, who conveyed to others such interest, which is now held by the defendants H. F. Raymond and Aggie Paddock, and is of the reasonable value of $1,000. Mrs. Boothe thereafter died intestate, leaving certain named defendants as her heirs.

Wright caused to be issued June 15, 1897, a special execution, directing the sale of the real property so attached, but, no levy having been made, the writ was returned wholly unsatisfied. A general execution was issued on this judgment May 8, 1899, which was returned without attempting to make any levy thereunder. Another general execution was issued March 28, 1900, pursuant to which certain real property of Mary C. Walling that had not been attached was sold, and the sum of $200 was credited on the judgment. Wright also procured another special execution June 23, 1904, directing the sale of the real property so attached to satisfy the remainder due on the judgment, obeying the command of which the defendant, C. C. Pennington, as sheriff, levied upon plaintiff's interest in such block 21, and advertised the premises for sale, whereupon this suit was instituted, the complaint setting out the facts, the substance of which is hereinbefore stated, and averring that, in consequence of the issuance of a general execution and of the sale of real property thereunder that had not been attached, Wright abandoned any lien that he may have secured by seizure of such interest in block

under the writ of attachment. The prayer for relief is that the property owned by Mrs. Boothe, which became subject to the lien of Wright's judgment, may be sold on execution in the inverse order of its alienation, so that the undivided one half of the Nodine Block, inherited by her heirs, be first disposed of, and, if the sum realized therefrom be insufficient to satisfy the judgment, that resort be had to the remaining half of that block, owned by the defendants H. F. Raymond and Addie Paddock, a sale of which will satisfy any remainder that may be due. The defendants Wright and Pennington filed their respective answers, and, the averments of new matter therein having been put in issue by replies, a trial was had, resulting in a decre dismissing the suit, and plaintiff appeals.

REVERSED.

For appellant there was a brief over the name of *Ramsey & Oliver*, with an oral argument by *Mr. W. M. Ramsey*.

For respondents there was a brief over the name of *Crawford & Crawford*, with an oral argument by *Mr. Thomas Harrison Crawford*.

MR. JUSTICE MOORE delivered the opinion of the court.

The transcript shows that Wm. Wilson and others September 22, 1885, by a warranty deed, conveyed to "Luke J. Boothe and Mary Ann Boothe" an undivided seven eighths interest in and to block 21 in the Town of Union, and that Bertha Nodine and her husband, April 5 1887, by a similar deed, conveyed to "L. J. Boothe, Sr., and Mary A. Boothe" the Nodine Block, particularly describing it. These grantees are not named in either deed as husband and wife, but it was stipulated at the trial in the lower court that at the times such conveyances were respectively made they sustained that relation, which continued until November 4, 1892, when the husband died, leaving Mrs. Boothe as his survivor.

1. Whatever the rule may be in other jurisdictions in respect to a deed executed to a husband and wife of real property, it is settled in this State that such a conveyance creates a tenancy by the entirety, and that upon the death of either spouse the survivor takes the whole estate : *Noblitt* v. *Beebe*, 23 Or. 4 (35 Pac. 248); *Howell* v. *Folsom*, 38 Or. 184 (63 Pac. 116, 84 Am. St. Rep. 785); *Hayes* v. *Horton*, 46 Or. 597 (81 Pac. 386). Therefore, on November 4, 1892, when the marital relation that had theretofore existed between Luke J. Boothe and Mary A. Boothe was severed by his death, she, eo instante, as his survivor, became the owner of, and was vested with, an estate in fee simple of the real property which was held by them as tenants by the entirety at his death.

2. Whether or not the inchoate right of survivorship of either spouse, as tenant by entirety of real estate, constitutes "property," within the meaning of that word as used in the statute (B. & C. Comp. § 296), so as to render such possible interest, before it accrues by the death of a husband or of a wife, subject to seizure by writ of attachment, or what the effect may be of issuing a general execution upon a judgment directing the sale of attached property, we do not deem necessary to a decision herein.

3. The property of a defendant in an action is attached as security for the satisfaction of any judgment that may be recovered. The purpose of such ancillary proceeding is to prevent the owner from voluntarily disposing of or incumbering his property, and to preclude other creditors from securing prior liens thereon, and when a judgment quasi in rem is rendered against such property, directing it to be sold to satisfy the debt of the attaching creditor, the latter's qualified right, secured by the seizure under the writ of attachment, becomes merged into the lien of the judgment.

4. In the case at bar no intervening rights of third persons have accrued subsequent to the attachment, and prior to the entry of Wright's judgment, that can effect any of the real property, the title to which became vested in Mrs. Boothe, so as to demand a levy of an execution upon the specific premises so originally seized, in order to protect his rights. The docketing of this judgment became a lien upon all the real property, the title to which vested in Mrs. Boothe in severalty upon the death of her husband, but such judgment did not establish any specific interest in her land.

5. The particular source from which a creditor derives the money necessary to satisfy his judgment would ordinarily appear to be a matter of indifference so far as he is concerned, and, as a debtor in making payment to a person having two or more demands against him may compel the crediting of the money tendered on account of a designated debt, so, too, a judgment debtor who conveys in separate tracts to different persons all his real property that is subject to a general judgment lien thereby forces his creditor, if he is obliged to resort to an execution, to satisfy his judgment by a sale of the real property so conveyed in an inverse order of its alienation: *Knott* v. *Shaw*, 5 Or. 482. This rule does not contravene the doctrine announced in *Dickson* v. *Back*, 32 Or. 217 (51 Pac. 727), where it was held that a deed, absolute in form, purporting to convey real property, but intended by the parties as security for the payment of a debt, was a mortgage, and did not transfer the title to the premises, but only created a lien thereon, in enforcing which it was decreed that the assets should be marshaled, and that the land should be sold upon execution issued on a judgment that was a prior lien, but not in an inverse order of incumbrances. The decision in that case proceeds upon the theory that, as Dickson's mortgage was subordinate to the lien of the

judgment, the equities, each being a lien, were equal, and hence the first in time should prevail, and that, if the plaintiff in that suit desired to be subrogated to the rights of the judgment creditor, he should pay off the prior lien. In the case at bar it will be remembered that plaintiff's interest and title to the real property in question is evidenced by Mrs. Boothe's deed, and not by any lien upon or incumbrance of the land which would necessitate a marshaling of the assets.

Believing that the rules of equity, as adopted in this State, demand that the real property which is subject to the lien of Wright's judgment should be sold in an inverse order of alienation, the decree is reversed, and one will be entered here directing the sale upon execution, first, of the premises of which Mrs. Boothe died siezed; second, the land conveyed to R. Eakin; and, third, if necessary, the real property so conveyed to plaintiff.   REVERSED.

---

Decided 23 January, 1906.