Argued February 25, reversed March 22, 1927.

# H. L. GANOE *v.* JUNIUS V. OHMART.

### (254 Pac. 203.)

**Husband and Wife—Land Conveyed to Husband and Wife by One Instrument Constitutes Them Tenants by the Entirety, Unless Different Intention is Manifested.**

1. Land conveyed to husband and wife by one instrument constitutes them tenants by the entirety, unless the conveyance manifests a different intention.

**Husband and Wife—Under Common Law, Neither Spouse Could Convey Fee to Estate by the Entirety and Deprive Other Spouse of Right of Survivorship.**

2. Under the common law, neither husband nor wife could convey fee to the estate by the entirety so as to deprive the other spouse of right of survivorship.

**Husband and Wife—Estates by the Entirety are not Repealed by the Married Women's Act (Or. L., §§ 9743, 9745, 9747, 9753, 9754, 9759).**

3. The Married Women's Act (Or. L., §§ 9743, 9745, 9747, 9753, 9754, 9759), while abolishing right of husband to the exclusive enjoyment of the usufruct of the estates by the entirety, does not repeal such estates.

**Husband and Wife—Interest of Judgment Debtor as Tenant by the Entirety may be Sold on Execution, Subject to Wife's Right of Survivorship Therein (Or. L., § 227).**

4. Interest of judgment debtor husband as tenant by the entirety with his wife may, in view of Section 227, Or. L., be sold on execution, subject to right of the wife if she survives him.

**Husband and Wife—Rents and Profits of Land Owned by the Entirety is Common Property of Husband and Wife.**

5. Rents and profits of land owned by the entirety, being personal property, is common property of husband and wife, each owning half thereof.

**Husband and Wife—Estates by the Entirety are Legal Estates as Fully as Though Vested in Individuals as Tenants in Common.**

6. Estates by the entirety being created by deed, devise or grant are legal estates as fully as though they were vested in individuals as tenants in common, and owners thereof can protect their interests as fully as though estates were held in common or in severalty.

1. See 13 R. C. L. 1108.
2. See 13 R. C. L. 1123, 1125.
3. See 13 R. C. L. 1126.
4. Rights of creditors in estate by entireties, see note in 30 L. R. A. 305.

Husband and Wife—Estate by Entirety may Exist in Equitable Interest in Realty.

7.  Estate by the entirety may exist in an equitable interest in realty.

Husband and Wife—Public Policy Prevents Debtor Avoiding Payment of Debt by Holding Land by Entirety.

8.  Public policy prevents a debtor from avoiding payment of his just debts by holding his land by the entirety.

Courts, 15 **C. J.**, p. 949, n. 49.
Husband and Wife, 30 **C. J.**, p. 555, n. 36, p. 557, n. 46, p. 558, n. 60, p. 566, n. 5, p. 567, n. 20, 24, p. 568, n. 34, p. 569, n. 36, 42, 43, p. 572, n. 84, 85.

From Multnomah: GEORGE ROSSMAN, Judge.

Department 1.

February 17, 1923, plaintiff recovered judgment against defendant in the Circuit Court for Multnomah County. Plaintiff caused execution to issue on said judgment and the interest of the defendant in lot 3, block 10, Council Crest Park, Portland, Oregon, to be levied upon, and advertised for sale by the sheriff of said county. The sale was set for October 20, 1924, at 10 o'clock, in manner and form prescribed by law. A few days before the day fixed for the sale defendant filed a motion for an order to quash the levy of execution against said property, to recall said execution against said lot, and to annul and to set aside all proceedings taken thereunder, for the reasons that said execution, levy and other proceedings to sell said lot are wrongful and unlawful as to said particular estate because the title thereto is vested in fee in defendant and his wife by the entirety. The motion was allowed by the Circuit Court, the writ of execution in as far as it affected said lot was quashed, recalled and vacated, and all other proceedings looking toward the sale thereof were annulled, set aside and vacated. It was further ordered that the sheriff be

and "is hereby directed to cancel and release said levy and writ of execution upon the above described real estate, and cancel and withdraw any publications and postings of notices of such sale of said property." From this order plaintiff appeals to this court. The only question to be determined is:

"Can a husband's right to real property held by husband and wife by the entirety be sold in this state on execution issuing from a judgment against the husband alone."

Reversed.

For appellant there was a brief over the names of *Mr. L. E. Schmitt* and *Mr. H. L. Ganoe,* with an oral argument by *Mr. Schmitt.*

For respondent there was a brief over the names of *Mr. W. O. Sims* and *Mr. Junius V. Ohmart,* with an oral argument by *Mr. Sims.*

COSHOW, J.—1. That land conveyed to husband and wife by one instrument constitutes them tenants by the entirety, unless the conveyance manifests a different intention, has become the settled law of this state. This is a rule of property not to be changed, except by the legislative department of the state: *Dodd* v. *First National Bank of Eugene,* 117 Or. 691 (245 Pac. 504); *Twigger* v. *Twigger,* 110 Or. 520, 534 (223 Pac. 934); *Stout* v. *Van Zante,* 109 Or. 430 (219 Pac. 804, 220 Pac. 414); *Chase* v. *McKenzie,* 81 Or. 429, 433 (159 Pac. 1025). This rule was first announced in *Noblitt* v. *Beebe,* 23 Or. 4 (35 Pac. 248), and has been consistently followed ever since.

Under the common law the husband had the use of the estate as his sole property during the existence of the marriage. He could sell the products of the

land and the proceeds of such sale were his own absolutely. He could lease and otherwise encumber it. He could sell his interest and transfer the possession. His grantee or alienee took title thereto subject to the right of survivorship in his wife. If the husband survived his wife his grantee in fee was vested with a fee title. His judgment creditors could seize and sell the land on execution with like effect: 30 C. J. 567, § 101; 13 R. C. L. 1123 et seq., §§ 142–146; Id. 1127, 1128, §§ 147, 148, and authorities cited under note 13; 17 R. C. L. 169, n. 19; Anderson's Dictionary of Law, 403; *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651 (9 Atl. 695, 59 Am. Rep. 52, 56); *Hiles* v. *Fisher,* 144 N. Y. 306 (39 N. E. 337, 43 Am. St. Rep. 762, 30 L. R. A. 305 et seq., and exhaustive note).

2. No act or conduct of the husband could deprive his wife of her interest in the estate. Her interest in the fee was the same as his. The only difference was in the issues, profits and rents which belonged to the husband by right of the marriage. The usufruct of the land belonged to the husband. Both alike owned the entire estate. Neither could convey the fee without the other joined: Cooley's Blackstone (4 ed.), 582, 583. This we understand to mean that neither could convey the fee so as to deprive the other of her or his right of survivorship: 13 R. C. L. 1123, § 142; 13 R. C. L. 1125, § 144; 17 R. C. L. 169, note 19; *Bynum* v. *Wicker,* 141 N. C. 95 (53 S. E. 478, 115 Am. St. Rep. 675); *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651 (9 Atl. 695, 59 Am. Rep. 52); *Howell* v. *Folsom,* 38 Or. 184, 186, 187 (63 Pac. 116, 84 Am. St. Rep. 785).

3. The Married Women's Act does not repeal estates by the entirety: Or. L., §§ 9743, 9745, 9747, 9753, 9754, 9759; 30 C. J. 558, § 87; 13 R. C. L. 1126, §§ 145,

146; *Oliver* v. *Wright,* 47 Or. 322, 326 (83 Pac. 870);
*Twigger* v. *Twigger,* 110 Or. 520, 534 (223 Pac. 934),
and other Oregon cases cited herein. The Married
Women's Acts have abolished the right of the hus-
band to the exclusive enjoyment of the usufruct of an
estate held by the entirety: 13 R. C. L. 1126, §§ 145,
146. There is an irreconcilable conflict in the different
jurisdictions in this nation regarding the rights of the
owners and their creditors of estates by entireties.
The cases are collated and the principles discussed
in 30 C. J. 555, § 85 et seq.; 13 R. C. L. 1096 et seq.,
Chap. XII; exhaustive note beginning in page 305 of
30 L. R. A.

4. As to the rights of creditors of either spouse
during the life of both to subject the interest of either
to the payments of the debts owing by husband or
wife there are two lines of authorities. The first
rules that during the marriage creditors of the hus-
band could not subject his interest to the payment of
his debts by execution. This line of authorities is
well represented in *Stifel's Union Brewing Co.* v.
*Saxy,* 273 Mo. 159 (201 S. W. 67, L. R. A. 1918C,
1009), and cases therein referred to. The reason for
so holding is concisely expressed in this language:

"Leaving out of view for the present the decisions
of the courts of this state, we conclude that where a
judgment and execution thereon are against a hus-
band alone, not including the wife, such judgment and
execution cannot affect in any way property held by
them by the entireties, nor can it affect any supposed
separate interest of the husband therein, for he has
no separate interest."

The other line of authorities rules that a husband's
interest in such an estate may be sold on execution
issuing on a judgment against the husband alone, sub-

ject to the right of the wife in case she survives him.
The second line of authorities is ably presented in
*Branch* v. *Polk,* 61 Ark. 388 (33 S. W. 424, 54 Am.
St. Rep. 266, 30 L. R. A. 324), where we find this
language:

"We think that the effect of these provisions was
to give the wife control of all the property owned
by her, including her interest in an estate by entirety
as well as other real estate.    To say that it did not
apply to an estate by entirety would be to deprive her
of a share in the rents and profits of such an estate
during the life of her husband, and would establish
an exception to the operation of the constitution and
statute resting on no valid principle or reason: *Hiles*
v. *Fisher,* 144 N. Y. 306 (39 N. E. 337, 43 Am. St. Rep.
766, 30 L. R. A. 305).    On the other hand, to say that
neither she nor her husband could convey any interest
in such an estate except by a joint deed would tie up
the estate, and prevent either of them from control-
ling or disposing of his or her interest without the
consent of the other.    It would also result in placing
it beyond the reach of the creditors of either of them,
and such is the rule followed in several of the states:
*McCurdy* v. *Canning,* 64 Pa. St. 39; *Chandler* v.
*Cheney,* 37 Ind. 391; *Naylor* v. *Minock,* 96 Mich. 182
(55 N. W. 664, 35 Am. St. Rep. 595, and note).

"But it would seem that this rule is to a certain
extent illogical, for under it the effect of the statutes
giving married women control of their own property
is also in this instance to curtail the power of the
husband over his own interest in real estate.    The
object of these laws was not to affect in any way the
control of the husband over his own property.    Their
sole purpose was to give to the wife what she did not
have at common law, the right to control and convey
her own property as if she were unmarried: *Bertles*
v. *Nunan,* 92 N. Y. 152 (44 Am. Rep. 361).

"While such legislation has taken away the control
of the husband over the interest of the wife in estates
of entireties, as it has removed his control from her

other property, yet it does not seem reasonable to hold that it also affected his right to control his own interest in such an estate, *or that it exempted such interest from seizure by his creditors.* As was said in *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651 (9 Atl. 695, 59 Am. Rep. 52): 'Any device of this character for the protection of the husband's property from his creditors is unknown to the common law, *and so contrary to public policy* that it ought not to be ingrafted upon our system of laws, by interpretation of the statute (Married Women's Act), unless the intent to do so is clearly expressed.'

"The rational construction of these provisions of our constitution and statute, which 'uprooted principles of the common law hoary with age,' swept away the marital rights of the husband during the life of the wife, and gave enlarged powers to married women, is, not that they lessen the power of the husband over his own interest in an estate by entirety, but that they deprive him of the control over the interest of the wife which he formerly exercised *jure uxoris,* and confer upon the wife the control of her own interest. The right of the wife to control and convey her interest, we think, is now equal to the right of the husband over his interest. They each are entitled to one-half of the rents and profits during coverture, with power to each to dispose of or to charge his or her interest, subject to the right of survivorship existing in the other."

Another leading case is *Hiles* v. *Fisher,* 144 N. Y. 306 (39 N. E. 337, 43 Am. St. Rep. 762, 30 L. R. A. 305). We quote:

"The grand characteristic which distinguishes a tenancy by the entirety from a joint tenancy is its inseverability, whereby neither the husband nor the wife, without the assent of the other, can dispose of any part of the estate, *so as to affect the right of survivorship in the other:* 1 Bl. 182; Washburn on Real Property, 425. * * The husband was held to be entitled to the full control and to take the rents and

profits of the land during the joint lives, to the exclusion of the wife, and he had power to sell, mortgage, or lease, for the same period, and this life interest was, according to the weight of authority, subject to the claims of his creditors: *Barber* v. *Harris,* 15 Wend. 615; *Jackson* v. *McConnell,* 19 Wend. 175 (32 Am. Dec. 439); *Meeker* v. *Wright,* 76 N. Y. 262; *Bertles* v. *Nunan,* 92 N. Y. 152 (44 Am. Rep. 361); *Ames* v. *Norman,* 4 Sneed, 683 (70 Am. Dec. 269); *Pray* v. *Stebbins,* 141 Mass. 219 (4 N. E. 824, 55 Am. Rep. 462). But the right of the husband at common law to take the rents and profits of lands held by him and his wife as tenants by the entirety, during coverture, and to assign and dispose of them during that period, did not, we apprehend, spring from the peculiar nature of this estate. He acquired no such right by force of the conveyance itself, and it was not an incident thereto. It was a right which followed the conveyance and inured to the husband from the general principle of the common law which vested in the husband *jure uxoris* the rents and profits of his wife's lands during their joint lives: 2 Kent's Commentaries, 130; Stewart on Husband and Wife, § 308. * *

"There are as we can perceive, but two other alternatives. Either the rents and profits follow the nature of the estate, and can neither be disposed of nor charged except by the joint act of both husband and wife, which seems to be the view taken in *McCurdy* v. *Canning,* 64 Pa. St. 39, or the parties become tenants in common or joint tenants of the use, each being entitled to one-half of the rents and profits during the joint lives, with power to each to dispose of or to charge his or her moiety during the same period, which seems to be the view taken in *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651 (9 Atl. 695, 59 Am. Rep. 52). We think the rule adopted in New Jersey best reconciles the difficulties surrounding the subject."

Although the precise question presented by the instant case has not been decided by this court, we be-

lieve the logic applied in opinions heretofore rendered aligns this court with the rule announced in Arkansas, New Jersey and New York. The earliest case in this state touching the issue involved herein is *Howell* v. *Folsom,* 38 Or. 184 (63 Pac. 116, 84 Am. St. Rep. 785) above. In a well-considered opinion Mr. Chief Justice ROBERT S. BEAN wrote:

"We take the rule, therefore, to be abundantly established that a husband can convey an estate held by himself and wife as tenants by the entirety, and that such conveyances will vest the fee in the purchaser, if the husband survive the wife. And, as our statute has given the wife power and authority to sell and convey her property 'to the same extent and in the same manner that her husband can property belonging to him' (Laws 1893, p. 170, amending Section 2992, Hill's Ann. Laws), we think it clear she may convey an estate by the entirety with like effect as her husband."

This opinion cites with approval *Buttlar·* v. *Rosenblath,* 42 N. J. Eq. 651 (59 Am.·Rep. 52, 9 Atl. 695), *Hiles* v. *Fisher,* above, and *Branch* v. *Polk,* above.

In *Hayes* v. *Horton,* 46 Or. 597 (81 Pac. 386), item 4 of the syllabi reads:

"Either party to an estate by entirety may mortgage his or her interest without changing the status of the property right of the other party thereto."

In *Oliver* v. *Wright,* 47 Or. 322 (83 Pac. 870), the court refused to pass upon the exact matter under consideration in the case at bar. In *Heacock et al.* v. *Loder·et al.,* 106 Or. 323 (211 Pac. 950), Mr. Chief Justice McBRIDE cited *Howell* v. *Folsom,* above, in the following language:

"In this state it is settled by the elaborate opinion of Mr. Chief Justice ROBERT S. BEAN in *Howell* v. *Folsom,* 38 Or. 184 (63 Pac. 116, 84 Am. St. Rep. 785),

that a husband may encumber his interest held by himself and wife in entirety, and that a sale upon such encumbrance will convey to the purchaser the fee in such property in case the husband survives his wife.''

In *Stout* v. *Van Zante,* 109 Or. 430 (219 Pac. 804, 220 Pac. 414), this court ruled that estates by entireties did not obtain in this state as to personal property. It is also there held:

''The common-law disabilities of a married woman have been entirely removed by statute in this state, and a married woman may now control and dispose of her separate property to the same extent that her husband can of his.''

5. It was therefore ruled that a note secured by mortgage to secure a part of the sale price of land to the vendors, who were the joint payees in the note, did not become the sole property of the wife upon the death of the husband. Both husband and wife owned one half of the note. It logically follows that the rents and profits of land owned by the entirety being personal property, is the common property of the husband and wife, each owning a half thereof.

The latest pronouncement of this court especially pertinent is the opinion of Mr. Justice Brown in *Klorfine* v. *Cole et al., ante,* p. 76 (252 Pac. 708), reading thus:

''The trial court held that the interest of Ernest L. Wells was not subject to the lien of defendant Cole's judgment, upon the theory that an estate by the entirety was exempt from execution against either spouse. The authorities are not in harmony upon this question. The decision of the trial court finds some support both from text writers and from courts. However, it is settled law in this state that the in-

terest of a judgment debtor, as tenant by the entirety with his wife, may be sold on execution.''

We think that the conclusion reached by the court in the last case cited is not only in harmony with the decided cases in this court, but it is also in accord with the spirit of our Code.

''All property, including franchises, or rights or interest therein, of the judgment debtor, shall be liable to an execution, except as in this section provided. * * '' Or. L., § 227.

6, 7. It is not claimed that the interest in the real property involved is exempt from execution by virtue of said Section 227. It is contended by defendant that an estate by entirety is in the nature of an equitable interest in realty. We cannot adopt that contention. Estates by the entireties are legal estates as fully as though the estates were vested in individuals as tenants in common. The estate is created by deed, devise or grant. The owners are in possession, entitled to the rents and profits, and can protect their interest therein to the same extent and by the same remedies that they can in estates held in common or in severalty: 13 R. C. L. 1104, § 127; 30 C. J. 567, § 101. An estate by entirety may exist in an equitable interest in realty: 30 C. J. 566, § 99.

8. We also believe that public policy prevents a debtor from avoiding payment of his just debts by holding his land by the entirety. It can easily be imagined that a dishonest debtor could thus defeat collection of his financial obligations though he owned valuable real property producing an income sufficient to allow him to live in luxury. This ruling does not destroy the nature of the estate. The sale on execution of the interest of the husband would not destroy or affect the right of survivorship in the wife. The

wife's interest would not be touched. The purchaser at such sale would procure one half of the usufruct of the property. If the husband survived the wife the purchaser would have the entire estate. If the wife survived the husband the purchaser's interest would terminate at the death of the husband. No injustice would be done either tenant by the entirety. Justice to creditors would thereby be more nearly accomplished than if the interest of the debtor could not be reached by legal process during the marriage of the tenants.

The order of the Circuit Court is reversed, and the cause remanded for further proceedings consistent with this opinion.      REVERSED AND REMANDED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.