Argued February 21; affirmed April 4, 1939

# WENKER *v.* LANDON ET AL.

(88 P. (2d) 971)

266

Department 2.

*Guy O. Smith,* of Salem, for appellant.

*George A. Rhoten,* of Salem (Rhoten & Rhoten, of Salem, on the brief), for respondents.

BAILEY, J. This action was instituted by John A. Wenker against Ray Landon as administrator of the

estate of George W. Johnson, deceased, Robert L. Johnson, a minor, Ray Landon as guardian of the person and estate of Robert L. Johnson, a minor, and certain tenants, for the recovery of 20 acres of farm land situate in Marion county, Oregon. From a judgment in favor of the defendants the plaintiff has appealed.

On December 3, 1935, and for some years prior thereto, George W. Johnson and Mary T. Johnson were husband and wife and owned as tenants by the entirety the real property here in controversy. In the evening of the day mentioned George Johnson killed his wife and shortly thereafter, during the same evening, took his own life. It is conceded that Mrs. Johnson predeceased her husband. At the time of death Johnson was almost 46 years of age, and his wife was about nine years his senior.

In April, 1933, Johnson had been committed to the state hospital for the insane because of being affected with epilepsy. In June of the following year his condition had improved to the extent that he was paroled from the state hospital to his wife, and he was still on parole at the time of his death.

No children were born to this marriage. The defendant Robert L. Johnson, the son of George Johnson by a former marriage and 19 years of age at the time of the trial, survived George Johnson as his only heir. The plaintiff, John A. Wenker, is the brother of Mrs. Johnson and her next of kin.

It is the plaintiff's contention that George Johnson feloniously took the life of his wife; that therefore, under § 10-213, Oregon Code 1930, he could not acquire any additional right, benefit or interest in the above-mentioned property because of her death; that his

minor son, Robert, as the heir of George Johnson, has no greater right in the said property than his father had at the time of the latter's death; and that the plaintiff as next of kin and heir at law of Mrs. Johnson is the owner of such real property and entitled to possession of it.

Section 10-213, *supra*, was enacted as chapter 270, Laws 1917, entitled, "An Act To prevent an heir or beneficiary who feloniously causes the death or disability of another from taking from such person any portion of his estate by devise, legacy, descent or as surviving spouse, or from taking as a beneficiary proceeds under a policy of insurance or certificate in a benevolent association or organization, issued to such person, and to repeal all Acts or parts of Acts inconsistent herewith."

Section 1 of the act, in so far as material to the present discussion, is as follows: "No person who feloniously takes or causes or procures another so to take the life of another shall *inherit from such person, or receive any interest whatsoever in the estate of the decedent as surviving spouse* [italics supplied], or take by devise or legacy from such deceased person any portion of his or her estate;" with provisions here appearing relating to beneficiaries under policies of insurance; "but in every instance mentioned in this section, all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken * * * shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution in case of death as now provided by law".

Before attempting to determine whether the provisions of the foregoing statute apply to the facts in the

instant case, it is well to ascertain the purpose which prompted the legislature to enact it. The courts of many of the states, prior to the enactment of the Oregon statute, § 10-213, *supra*, had held that inasmuch as the devolution of a decedent's estate had been specifically provided by statute, an heir could not be denied the right to inherit from his ancestor, even though the latter's death had been caused by the heir's felonious act. The reasoning in such cases was that the law itself made no exception and it was not the province of the court to read into the law something which it did not contain. Numerous decisions to this effect are based on the ground that the legislature in directing the course of descent and distribution of decedents' estates had declared the public policy of the state in that respect and that the courts could not alter or affect the policy so determined. In cases in which the decedent died testate it has likewise been held that the courts are powerless to alter the directed course of devolution of his estate.

With increase of the issuance of life insurance policies, instances of beneficiaries' causing the death of the insured in order to profit from the proceeds of such policies became more numerous. Because payment of the benefits of the policies was held to be contractual, it was decided that the insurer had no alternative but to pay the proceeds of policies to the beneficiaries therein designated.

■ Obviously to meet difficulties such as had confronted the courts of other jurisdictions in the instances hereinabove pointed out, the legislature enacted § 10-213, *supra*. It will be noted that the purpose of the act is to prevent an heir, devisee, legatee or surviving spouse who had feloniously caused the death of a decedent from inheriting or receiving any part of the

estate of the decedent. It also had the added purpose of preventing a beneficiary under a policy of life insurance who feloniously caused the death of the insured from receiving any proceeds of such insurance policy. This latter provision may be laid aside as far as the present case is concerned.

The immediate question which confronts us is whether the legislature in enacting § 10-213, *supra*, intended to affect the right of a surviving spouse as tenant by the entirety. It is therefore necessary to consider the nature of estates by the entirety. The following definition is found in Thompson on Real Property, 1929 Supplement, § 1735:

"An estate by entirety is an estate held by husband and wife by virtue of title acquired by them jointly after marriage. It is a peculiar and anomalous estate, *sui generis* in character. Estates by entirety have no moieties. *Each owner holds the entirety. Each receives per tout et non per my.* Such estates are creatures of the common law created by legal fiction and based wholly on the common-law doctrine that the husband and wife are one. And therefore there is but one estate and, in contemplation of law, but one person owning the whole. There can be no severance of the estate by the act of either, and the survivor becomes seised as sole owner of the entirety of the estate. *The estate is not one of inheritance.*" (Italics supplied.)

When real property is conveyed to husband and wife as tenants by the entirety they take but one estate, and if one spouse dies the estate continues in the survivor. Such survivor takes no new interest or estate: *Beddingfield v. Estill*, 118 Tenn. 39, 100 S. W. 108, 9 L. R. A. (N. S.) 640, 11 Ann. Cas. 904.

Mrs. Johnson died intestate. Therefore, the question of whether her husband received any of her estate

as devisee or legatee is eliminated. As to the property which she and her husband held by the entirety, here in controversy, the husband did not inherit it or any interest in it from her. Upon her death the real property owned by them as tenants by the entirety did not, nor did any interest which the wife might have had therein, become a part of her estate; and therefore George Johnson did not receive any interest in her estate as surviving spouse, in so far as concerns that realty.

■ In this state "the widower of every deceased person shall be entitled, as tenant by the curtesy, to the use, during his natural life, of one-half part of all the lands whereof his wife was seised of an estate of inheritance at any time during his marriage, . . . unless he is lawfully barred thereof": § 10-330, Oregon Code 1930. Likewise, a widow is entitled to dower: § 10-301, Oregon Code 1930. The widow, under our laws, is also given a maintenance allowance from the estate of her husband for one year: § 11-401, Oregon Code 1930. Provision is also made for setting apart to the surviving spouse as a homestead real property of the decedent exempt from execution: § 11-402, Oregon Code 1930. It is such benefits as these from the estate of a decedent that § 10-213, *supra*, withholds from the "surviving spouse" under conditions therein mentioned. These benefits or rights, however, are foreign to, and not to be derived from, estates by the entirety.

Reverting to the title of the act, we find that the purpose of the statute as therein expressed is "to prevent an heir or beneficiary who feloniously causes the death or disability of another from taking from such person any portion of his estate by devise, legacy or as surviving spouse". The body of the act, after deny-

ing to any person who feloniously takes the life of another the right to inherit from such person or receive any interest whatever in the estate of the deceased as surviving spouse or to take by devise or legacy from such deceased person any portion of his or her estate, specifically provides what shall be done with the decedent's estate, by directing that "in every instance mentioned in this section, all benefits that would accrue to any person upon the death or disability of the person whose life is thus taken . . . shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution in case of death as now provided by law." This language of the statute is easily understandable when applied to a decedent's estate that is subject to distribution among the decedent's heirs. It is undeniable that the surviving spouse does receive some benefit in an estate held by the entirety, upon the death of the other spouse. He thereby becomes the sole owner of the property and can dispose of it as he sees fit. But the benefit which he thus receives is not subject to distribution among the decedent's heirs.

In the case of *Beddingfield v. Estill,* supra, the supreme court of Tennessee in denying to the heirs of the wife who had been slain by her husband the right to any interest in the estate which had been held by the decedent and her husband as tenants by the entirety, either under the Tennessee statute, which is similar to the one with which we are here concerned, or at common law, said:

"We do not think that either the common-law rule or statute here invoked apply to this case.

"First. Mary G. Baird, the mother of complainants, did not have any title to or estate in the lands sued for which could descend to, be inherited, or otherwise

acquired by C. W. Baird, her husband, her heirs at law, or other persons, upon her natural death. C. W. Baird could not and did not inherit, acquire, or otherwise take any interest or estate in the lands from or through his wife, and would not have done so had she died a natural death. The title which he claimed was acquired and vested in him by the conveyances made to him and his wife previous to her death, and he did not attempt to convey anything acquired through or under her. Where land is conveyed to husband and wife to hold by entirety, the survivor, upon the death of the other, takes and becomes vested of the entire estate—a fee simple estate—by virtue of the grant or deed conveying the property to them; the interest of the deceased being terminated by his or her death. This is an ancient, familiar, and well-established doctrine of the common law, and enforced in this and all of the other states of the Union, so far as we are informed.''

The opinion discusses a number of other decisions on this subject and concludes thus:

''Second. Nor can complainants recover upon the theory that under the statute C. W. Baird forfeited to them the estate vested in him by the conveyance under which he and his wife held in these lands. It was not the intention of the general assembly that vested rights of this character should be forfeited by the murderous act of the owner therein stated. It was only intended that he should not in any way acquire any new rights or property interest from others as the result of his crime. Any other construction of the statute would render it void. Our constitution (article 1, section 12) prohibits the enactment of any law to the effect that a conviction for crime shall work corruption of blood or forfeiture of estate.''

It undoubtedly was not the intention of the legislature of this state in enacting § 10-213, *supra*, to forfeit the interest of the surviving spouse in lands held in tenancy by the entirety. If such were the case, it would

be contrary to § 25, article I, of our constitution, which provides that, "No conviction shall work corruption of blood or forfeiture of estate." Neither can it be said that the legislature intended that the property should, after the death of one of the spouses, be held by the surviving spouse and the heirs of the deceased as tenants by the entirety, inasmuch as an estate by the entirety is limited to property owned by husband and wife during coverture. Nor does the act itself purport to create any other or different kind of tenure with reference to such property.

It is our conclusion that § 10-213, *supra*, was not intended to and does not embrace estates by the entirety.

■ The appellant, however, urges that even if that statute does not apply in the present instance, under the common law the plaintiff is entitled to relief in this action, and our attention is directed to three decisions to which we shall now briefly refer.

In *Bryant v. Bryant*, 193 N. C. 372, 137 S. E. 188, 51, A. L. R. 1100, property was held by the husband and wife as tenants by the entirety. The husband, who was a number of years older than his wife, feloniously caused her death. In an equitable proceeding brought by the heirs of the deceased wife, the court there decided that the surviving husband held the title to the property in trust for the benefit of the wife's heirs, on the ground that the wife's normal life expectancy exceeded his, and that had she not been slain she would probably have outlived him and would have become seised as sole owner of the entirety of the estate. After pointing out the incidents of a tenancy by the entirety, the court observed: "It is therefore manifest that, if the deceased wife were now living, the appellant [the

surviving husband] could not be deprived of his interest in the estate by an arbitrary judgment of the court. None the less is he entitled to the enjoyment of such interest after her death; but for the benefit of her heirs at law a court of equity will interpose its protecting shield." The opinion stated that the plaintiffs "should be adjudged the sole owners, upon the appellant's death, of the entire property as the heirs of their deceased mother."

*Barnett v. Couey*, 224 Mo. App. 913, 27 S. W. (2d) 757, involved the ownership of a bank deposit belonging to a husband and wife as an estate by the entirety. The husband feloniously caused the death of his wife and shortly thereafter took his own life. The suit was between the administrators of the two decedents' estates, the administrator of the wife's estate contending that he was entitled to one-half of this deposit, on the ground that the estate of the husband should not profit from his wrongful act. The court decided that the deposit should be treated as held by the two administrators as tenants in common, with the result that each estate was awarded one-half of the deposit. It is intimated in the opinion, however, that the plaintiff might have been granted other and greater relief, if the demand had not been limited to one-half of the deposit. In arriving at its decision, the court did not distinguish between a tenancy by the entirety in personal property, which is recognized in that jurisdiction, and a tenancy by the entirety in real property.

In *Van Alstyne v. Tuffy*, 169 N. Y. S. 173, it was held that the heirs of a wife slain by her husband, who thereupon killed himself, were entitled to the real property owned by the husband and wife as tenants by the entirety. The decision is based wholly on the proposi-

tion that ''no man shall be permitted to profit by his own wrong'', and that to hold otherwise would be to allow the heirs of the husband to be benefited by his wrongful act. No attention is given to the peculiar character of estates by the entirety.

It will be noticed that in the foregoing cases three different theories are severally applied, but we are not willing to adopt any one of them. We feel that if any change in the established rules relating to tenancy by the entirety is to be made with respect to the rights of the surviving spouse, such change lies within the province of the legislature, and not the courts.

The judgment appealed from is affirmed.

RAND, C. J., and LUSK, J., concur.

---

BELT, J., concurring in the result:

This is an action in ejectment instituted by John A. Wenker against Ray Landon as administrator of the estate of George W. Johnson, deceased, Robert L. Johnson, a minor, Ray Landon as guardian of the person and estate of Robert L. Johnson, a minor, and certain tenants, to determine the title and right to possession of twenty acres of farm land situate in Marion county, Oregon.

On December 3, 1935, and for some years prior thereto, George W. Johnson and Mary T. Johnson were husband and wife and owned as tenants by the entirety the real property above mentioned. It is conceded that on the evening of the above date, George W. Johnson killed his wife and, on the same day, within a short time thereafter, committed suicide by hanging himself. It is also agreed that Mrs. Johnson predeceased her hus-

band. No children were born as a result of this marriage and both the decedents died intestate.

The defendant Robert L. Johnson, son of George W. Johnson by a former marriage, is the sole surviving heir of his father. The plaintiff, John A. Wenker was the brother of Mrs. Johnson and is her only surviving heir and next of kin.

The cause was submitted to the court without a jury and a judgment rendered dismissing the action. From this judgment, the plaintiff appeals.

It is the plaintiff's contention that George W. Johnson feloniously took the life of his wife and that, therefore, under § 10-213, Oregon Code 1930, neither he nor his heir could acquire any right, benefit or interest in the above-mentioned property because of her death; and that the plaintiff, as next of kin and heir at law of Mrs. Johnson, is the owner and entitled to possession of such property.

The defendants contend that the above statute has no application to the facts in this case and, since it is conceded that George W. Johnson survived his wife, the estate being held by them in the entirety, title to the property in question would be vested in him. Thus, his sole heir at law, Robert L. Johnson, would, under the rules of descent, be entitled to be declared to be the owner thereof. It is further contended by defendants that Johnson did not feloniously kill his wife but that he was insane and did not have mental capacity to distinguish between right and wrong.

As I view the record, the vital question is whether there is any substantial evidence to support the judgment. It is to be borne in mind that the cause was submitted to the court without a jury and its general finding has the force and effect of the verdict of a jury.

Relative to the issue as to whether the life of this woman was feloniously taken, we should not, therefore, be concerned with the weight of the evidence but rather with the question as to whether there is any substantial evidence tending to show that Johnson was incapable of a felonious intent at the time he took the life of his wife.

What has been said relative to this issue is based on the assumption that the statute upon which plaintiff relies applies to a case where an estate by the entirety is involved. I cannot concur in what seems to me a narrow construction of § 10-213, Oregon Code 1930, as expressed in the majority opinion. I am not willing to agree to the proposition that, under the above statute, a man could murder his wife and come into the immediate enjoyment of an estate held by them in the entirety. The primary purpose in enacting the statute was to prevent a person from profiting by his own wrong. The prohibition against receiving "any interest whatsoever in the estate of the decedent" is broad enough, in my opinion, to cover the instant case.

The authorities are in conflict as to whether under the common law property held as an estate by the entirety will pass to a person who has wrongfully taken the life of his spouse. See *Beddingfield v. Estill*, 118 Tenn. 39, 100 S. W. 108, 9 L. R. A. (N. S.) 640, 11 Ann. Cas. 904; *Bryant v. Bryant*, 193 N. C. 372, 137 S. E. 188, 51 A. L. R. 1100; *Barnett v. Couey*, 224 Mo. App. 913, 27 S. W. (2d) 757; *Van Alstyne v. Tuffy*, 169 N. Y. S. 173; 31 Law Notes 9; 11 N. Y. U. L. Q. Rev. 298; 82 U. Pa L. Rev. 183; 2 Wash L. Rev. 121. It is the plaintiff who invokes the statute and the burden of proof on the question as to whether there was a felonious taking of the life of Mrs. Johnson rests upon him. We are not advised by

the record as to how this woman was killed except that, under the stipulation of facts, she died "from an on account of blows or injuries received by her from the hands of George W. Johnson." For aught that appears, he might have shot her in self-defense or struck her with a sledge hammer in a fit of anger. Under this state of the record, we are not permitted to invoke any presumption of the wrongful use of deadly weapons.

The record discloses that, in April, 1933, George W. Johnson was committed to the state hospital for the insane and that he was paroled, but not discharged, in June of the same year. It also appears that, at the time of his death, he was under guardianship and parole. It being shown that there was an adjudication of insanity at the time of his commitment, under the clear weight of authority such mental condition would be presumed to continue until overcome by evidence to the contrary: *Johnson v. Johnson*, 124 Or. 480, 264 P. 842; *In re Dugan*, 158 Or. 439, 76 P. (2d) 961, and cases in note 68 A. L. R. 1315. Aside from the presumption of insanity upon which defendants have a right to rely, the record discloses the following testimony of Dr. Charles E. Bates, a specialist in psychiatry employed at the state hospital:

"Q. What was he suffering from? A. The diagnosis in his case was epilepsy of the delirious and confused type.

\* \* \* \* \*

"Q. Did you ever observe him in any fit of anger or epileptic fits? A. I did not have the privilege of seeing him in any epileptic fits on my ward. He had convulsions, however, in the institution, but under treatment they had become less frequent, and I think most of them had occurred at night. However, he had several convulsions when he first came to the institution during the daytime.

"Q. Do persons recover from the type of epilepsy that George W. Johnson had? A. No.

\* \* \* \* \*

"Q. I will ask you, Doctor, as to whether or not in your opinion persons suffering from the type of epilepsy this man had would have occasions when they could not distinguish right from wrong. A. Well in the—in fits such as he had it is possible for a patient to have what we call an amnesic state, and in an amnesic state go into a fit of anger, or at least they could have a fit of anger in this amnesic state and do something they afterwards would not know anything about. As far as knowing right or wrong, they don't know anything about it at that time."

The doctor, however, refused to say, in answer to a hypothetical question, that in this particular instance Johnson did or did not know "right from wrong at the time he committed the act." No one saw the deed committed and we are permitted to draw inferences only from the facts proved. There is evidence that half an hour prior to the time he killed his wife he was in a state of anger and mental confusion.

In my opinion, there is some evidence tending to show that Johnson, at the time of the killing of his wife, was incapable of entertaining a felonious intent. It was, therefore, a question for the trial court to determine.

For the reasons above stated, I concur in the result reached in the majority opinion although I cannot agree with its reasoning.