Argued and submitted February 12, affirmed on appeal and on cross-appeal
August 21, petition for review denied October 29, 1996 (324 Or 323)

Gary NEHER,
Personal Representative of
the Estate of Julie Neher, Deceased,
*Appellant - Cross-Respondent,*

*v.*

Larry Lee CHARTIER,
*Respondent, Cross-Appellant,*

*and*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a municipal corporation,
doing business under the
assumed business name of Tri-Met,
*Defendant - Cross-Appellant.*

(A9112-08001; CA A87545)

923 P2d 653

Elden M. Rosenthal argued the cause for appellant - cross-respondent. With him on the briefs were B. Carlton Grew and Rosenthal & Greene, P.C.

John R. Faust, Jr. argued the cause for respondent - cross-appellant and defendant - cross-appellant. With him on the brief was Schwabe, Williamson & Wyatt.

Before Riggs, Presiding Judge, and Deits and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

In this action for wrongful death, the issues are whether the trial court erred in holding that the liability cap contained in the 1989 version of the Oregon Tort Claims Act (OTCA), ORS 30.270, applied to a claim brought against a public employee and whether the court erred in concluding that a calculation of the pecuniary loss to the decedent's estate was a form of "special" damages under the OTCA. We affirm.

On June 17, 1991, Julie Neher (the decedent) was hit and killed by a bus when she crossed a street in a marked crosswalk while the green light/walk signal was activated. Defendant Chartier, the bus driver, was an employee of defendant Tri-County Metropolitan Transportation District of Oregon (Tri-Met), a municipal corporation that operates a public transportation system in the Portland area. The decedent's father (plaintiff), acting as personal representative of the estate, brought this wrongful death action against both Chartier and Tri-Met.

On defendants' motion for judgment on the pleadings, the trial court denied plaintiff recovery on the basis of ORS 30.265(3)(a) (1989) a provision of the OTCA that granted immunity to public bodies and their employees if the person injured or killed was covered by any workers' compensation law. On appeal, we affirmed. *Neher v. Chartier*, 124 Or App 220, 862 P2d 1307 (1993). The Supreme Court allowed review, declared that ORS 30.265(3)(a) (1989) violated Article I, section 10, of the Oregon Constitution, and remanded the case to the circuit court. *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994). *See also Kilminster v. Day Magnet Corp.*, 323 Or 618, 919 P2d 474 (1996) (discussing *Neher* and its holding).

On remand, the parties stipulated to a verdict that defendants Chartier and Tri-Met had been negligent and that their negligence had directly caused the decedent's death. The parties stipulated that the decedent's estate had incurred medical and burial expenses of $20,820.86 and also had suffered a pecuniary loss of $150,000, which was based on the present value of the decedent's future earnings, had

she survived, less her reasonably anticipated future expenditures. They further stipulated that "$429,179.14 represents the sum of money necessary to compensate decedent's estate for decedent's pain and suffering, and for the loss of society, companionship and services suffered by decedent's two surviving heirs, her parents[.]" In all, the damages totaled $600,000.

Plaintiff prepared and submitted for the trial court's signature a form of judgment awarding $600,000 to plaintiff. Defendants objected on the grounds that plaintiff's claim against Chartier was limited by the OTCA's $100,000 liability cap and that the estate's $150,000 "pecuniary loss" was not an example of "special" damages, as that term was used in the OTCA. The trial court agreed that the OTCA's liability cap applied to Chartier, but rejected defendants' second argument. Accordingly, the court entered a judgment in which it ruled that the estate's pecuniary loss, medical expenses and costs of burial were all "special damages" (totaling $170,820.86) and that the amount of recoverable damages, including those assessable against Chartier, was limited by the OTCA's liability cap. It concluded that, because the decedent was survived by only two heirs, general damages were limited by the OTCA to $200,000, *i.e.*, $100,000 per heir, and special damages were likewise limited to $100,000 per heir. The court therefore awarded damages totaling $370,820.86 ($200,000 general damages plus $170,820.86 special damages).

Plaintiff appeals, arguing that the liability cap contained in ORS 30.270(1) (1989) does *not* apply in a suit against an individual public employee such as Chartier. Defendants cross-appeal, arguing that the damages that were designated as "pecuniary loss" are actually damages for impaired future earnings, which should be viewed as *general* damages, not special damages.

◼ We begin with plaintiff's appeal, which calls for an interpretation of ORS 30.270 (1989). That statute provided, in relevant part:

> "(1) *Liability of any public* body or its officers, *employees* or agents *acting within the scope of their employment or*

*duties on claims within the scope of [the OTCA]* shall not exceed:

"* * * * *

"(b)  $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000.

"(c)  $500,000 for any number of claims arising out of a single accident or occurrence."[1] (Emphasis supplied.)

Defendants focus on the portion of the statute that refers to employees "acting within the scope of their employment." They contend that, because plaintiff specifically alleged that Chartier was acting within the scope of his employment at the time of the accident, the liability cap in subsection (1)(b) applies. Plaintiff focuses on the portion of subsection (1) that refers to "claims within the scope of [the OTCA]" and contends that the claim against Chartier is, instead, a "common law claim."

The record does not support plaintiff's contention. The complaint is captioned "Second Amended Complaint for Wrongful Death." It alleges that

"[a]t all times pertinent, Larry Lee Chartier was a Tri-Met bus operator acting within the course and scope of his employment in operating a Tri-Met bus."

The complaint also alleges that the decedent was killed as a direct result of defendants' negligence and it states that notice of this claim was given to Tri-Met pursuant to the OTCA. Nothing in the complaint suggests that the claim against Chartier is a common-law claim that is being brought against him in his capacity as a private individual. Instead, it clearly reveals that the action is against Tri-Met under the

---

[1] The OTCA has since been amended to provide that the "sole cause of action for any tort of [public employees] acting within the scope of their employment or duties and eligible for representation and indemnification * * * shall be an action against the public body *only*." ORS 30.265(1) (emphasis supplied). *See Berry v. Dept. of General Services*, 141 Or App 225, 917 P2d 1070 (1996) (similar issue, but decided under current version of the statute).

doctrine of *respondeat superior* and against Chartier in his capacity as a Tri-Met bus driver, *i.e.*, in his capacity as an employee of a public body. Accordingly, it is a claim "within the scope of" the OTCA, ORS 30.270(1) (1989), and it is subject to the damages limitation in subsection (1)(b) of that statute. *See also* ORS 30.265(1) (1989) (scope of liability under OTCA encompasses torts committed by public officers, employees and agents who are acting within the scope of their employment or duties).

Plaintiff argues that such a conclusion is contrary to the Supreme Court's holding in *Krieger v. Just*, 319 Or 328, 876 P2d 754 (1994). In *Krieger*, the court analyzed the 1987 version of the OTCA[2] and held that when a plaintiff brings a common-law claim against a public employee defendant in that defendant's capacity *as a private individual only*, the claim is not within the scope of the OTCA; consequently, the OTCA requirement that notice of claims be given to the public employer is not applicable. Although the "actionable events" in *Krieger* took place while the defendant was in fact acting within the scope of her public employment, and the defendant attempted to defend on the ground that the plaintiff's claims were therefore within the scope of the OTCA, 319 Or at 337, the court reiterated its previously established rule that public employees are not immune from personal liability for their individual torts committed in the course of their governmental employment, *id.* at 332, and that common-law claims against individual public employees, *qua* individuals, could still be brought *outside* the scope of the OTCA. *Id.* at 333. The court did not discuss the applicability of the OTCA's liability cap to the individual defendant in that case, and the holding was limited to the altogether different issue of *notice* under the OTCA; thus *Krieger* is of questionable relevance to the dispositive legal question in this case.

Even if *Krieger* were relevant, the critical difference between that case and the present is that here, plaintiff's wrongful death claim was against both a public body and a public employee acting in his official capacity, and as a result, Tri-Met was obligated to defend and indemnify Chartier.

---

[2] The relevant portion of the 1987 version of the OTCA is identical to the language of the 1989 version that is at issue in this case.

ORS 30.285 (1989). In *Krieger*, the claim was brought against the defendant as a private individual only, and no public body was a party to the litigation. The complaint did not allege that the defendant was a public employee acting within the scope of her employment nor suggest that the tort arose out of the performance or nonperformance of an employment duty. On those facts, the *Krieger* court concluded that the OTCA's notice requirement did not become applicable simply because the defendant "happened to be acting as a public employee at the time of the tort on which the claim [was] based." 319 Or at 335. The trial court in this case did not err in distinguishing *Krieger* and in holding that the OTCA limitation on liability is applicable to both Tri-Met *and* Chartier.[3]

██ We turn to defendants' cross-appeal, which presents an issue of first impression: Are the damages for "pecuniary loss" to the decedent's estate assessable against Tri-Met as "general" damages, or did the trial court properly conclude that they are "additional special damages" under ORS 30.270(1)(b)? The OTCA does not define those terms, but the parties appear to agree, correctly, that for purposes of the OTCA, "special" damages are the equivalent of "economic" damages. *See Whitman-McCoy v. Dept. of Corrections*, 132 Or App 45, 50, 887 P2d 375 (1994) (after the change in nomenclature, general damages are "noneconomic" damages and special damages are "economic" damages).

█ ORS 18.560(2)(a) (1989) defines economic damages as

"objectively verifiable monetary losses including but not limited to * * * *loss of income and past and future impairment of earning capacity*[.]" (Emphasis supplied.)

---

[3] We need not address plaintiff's equal protection arguments because our holding does not impair the ability to recover against public employees in their private capacities. *See also Hale v. Port of Portland*, 308 Or 508, 525, 783 P2d 506 (1989) (rejecting equal protection challenge to OTCA's damage limitations); *Rogers v. Saylor*, 306 Or 267, 286, 760 P2d 232 (1988) (the OTCA limits damages to the extent that public employees acted within the scope of their duties, but a common-law claim without limitation on damages can be brought to redress acts committed outside that scope).

Noneconomic damages are defined as

> "subjective, *nonmonetary losses*, including but not limited to pain, mental suffering, emotional distress, \* \* \* loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment." ORS 18.560(2)(b) (1989) (emphasis supplied).

*See also Greist v. Phillips*, 322 Or 281, 291, 906 P2d 789 (1995) (interpreting ORS 18.560). Defendants contend that the $150,000 "pecuniary loss" to which the parties stipulated—based on their calculation of the present value of the decedent's future earnings, had she survived, less her reasonably anticipated future expenditures—is analogous to a claim for impaired future earning capacity, which was treated as a form of *general* damages in *Kinney v. General Construction Company*, 248 Or 500, 509, 435 P2d 297 (1967) ("impairment of future earning capacity is part of general damages and is incapable of exact monetary computation"). However, *Kinney* was decided under the common law and not under ORS 18.560. That statute, which controls the present case, specifically provides that "future impairment of earning capacity" is a type of economic damage. ORS 18.560(2) (1989).[4] *DeVaux v. Presby*, 136 Or App 456, 463, 902 P2d 593 (1995) (observing that "by definition, loss of future earning capacity *is* an objectively verifiable monetary loss" under ORS 18.560) (emphasis in original). It is not rendered a subjective loss simply because there is "inherent speculation" in the task of assessing an individual's lost future earning capacity. *Richmond v. Zimbrick Logging, Inc.*, 124 Or App

---

[4] ORS 18.560(1) (1989) provides:

> "*Except for claims subject to [the OTCA]* and [the Oregon Workers' Compensation Act], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, *the amount awarded for noneconomic damages shall not exceed $500,000.*" (Emphasis supplied.)

By its specific citation to the OTCA in subsection (1) but not in subsection (2), which provides the definitions for economic and noneconomic damages, we understand ORS 18.560 to be inapplicable to OTCA claims only with regard to the liability cap in subsection (1). *See Rogers v. Saylor*, 306 Or 267, 272 n 6, 760 P2d 232 (1988) (an OTCA case citing ORS 18.560 for its definition of noneconomic damages); *see also Griffin v. Tri-Met*, 318 Or 500, 517 n 4, 870 P2d 808 (1994) (Unis, J., dissenting) (same).

631, 636, 863 P2d 520 (1993), *rev den* 318 Or 459 (1994). Here, the parties agreed that the decedent's lost future earnings, minus future expenditures, constituted a $150,000 pecuniary loss to the estate. The trial court did not err in treating that loss as an item of "special" damages under ORS 30.270 (1)(b) (1989).

■ Defendants also argue, in the alternative, that plaintiff's total recovery cannot exceed $300,000, because ORS 30.270(1)(b) provides that "any claimant" may recover $100,000 as general and special damages, but then states that "in no event shall the total award of special damages exceed $100,000." Defendants apparently interpret the latter clause as a limitation on the *aggregate* amount recoverable as special damages on a wrongful death claim. Hence, they arrive at a maximum available recovery of $300,000: $100,000 in general damages for each of the two claimants, plus $100,000 for special damages. That interpretation is incorrect and inconsistent with the balance of the statute. As the Supreme Court said in *Christensen v. Epley*, 287 Or 539, 601 P2d 1216 (1979), when the personal representative of an estate brings a wrongful death claim under the OTCA, the representative sues on behalf of the decedent's beneficiaries, whose number determines the number of "claims" and therefore the number of "claimants." By its terms, the $100,000 special damages limitation in ORS 30.270(1)(b) applies to "any claimant" and therefore limits the amount that each claimant may recover as special damages. That subsection does not address aggregate amounts, *i.e.*, it does not establish a cap on the total amount of money recoverable as a result of one individual's wrongful death. ORS 30.270(1)(c) (1989), however, does. It provides that a damage award payable by a public body in an action under the OTCA is limited to $500,000 regardless of the number of claims (and therefore claimants) in that action.

Thus, so long as the *aggregate* damage award for all claimants is within that $500,000 cap, the maximum award possible for each claimant is $200,000: $100,000 for general damages and $100,000 for special damages. ORS 30.270(1)(b) (1989). Such an award ($200,000 to one individual) is possible only when the general and special damages together exceed $100,000, "in which case the claimant may recover additional special damages, but in no event shall the total

award of special damages exceed $100,000." *Id.* Accordingly, only in cases involving two claimants can maximum awards be recovered by both individuals ($200,000 x 2 = $400,000). If there are three claimants, all three cannot recover the maximum award, because the aggregate amount ($200,000 x 3 = $600,000) would exceed the $500,000 cap. Here, the decedent's two surviving heirs were awarded $100,000 each, as general damages, and the equivalent of $85,410.43 each, as special damages. Those amounts, as well as the total amount of $370,820.86, were within the limits established by ORS 30.270(1) (1989). There was no error.

Affirmed on appeal and on cross-appeal.