Argued and submitted October 15, 2003, on appeal, judgment modified to award $31,086.72 each to George Spada and Marietta Spada; otherwise affirmed; affirmed on cross-appeal January 14, 2004

William C. McCORMICK
and Jani McCormick,
*Plaintiffs,*

*v.*

CITY OF PORTLAND,
*Defendant.*

George SPADA
and Marietta Spada,
*Appellants - Cross-Respondents,*

*v.*

CITY OF PORTLAND,
*Respondent - Cross-Appellant,*

*and*

William C. McCORMICK,
*Defendant.*

9607-05374; A107618

82 P3d 1043

Mark C. McClanahan argued the cause for appellants - cross-respondents George Spada and Marietta Spada. With him on the briefs was Mark C. McClanahan, P.C.

Harry M. Auerbach, Senior Deputy City Attorney, argued the cause and filed the briefs for respondent - cross-appellant City of Portland.

Douglas G. Schaller and Michele C. Smith filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs George and Marietta Spada received a judgment of $62,173.44 against the City of Portland for damage to their property caused by a landslide and exacerbated, according to the jury, by the city's negligence and trespass. The trial court denied the city's motion to reduce the damages pursuant to ORS 30.270(1)(a), which imposes a $50,000 per-claimant cap on property damage awards against public bodies. On appeal, the Spadas assign error to the amount and form of the damage award, contending principally that they should receive compensation not only for the cost of repairing their property but also for its lost fair market value. On cross-appeal, the city assigns error to the trial court's ruling that the damage cap in ORS 30.270(1)(a) cannot constitutionally be applied against Spadas in this case. On the appeal, we modify the judgment and affirm as modified; on the cross-appeal, we affirm without reaching the constitutionality question.

The Spadas own an unimproved lot on Southwest Council Crest Drive in Portland next to a lot owned by the McCormicks. On February 9, 1996, in the aftermath of record rains, a landslide flowed over both properties. The McCormicks brought this action against the Spadas for property damage. The Spadas filed counterclaims against the McCormicks. They also filed cross-claims against the City of Portland for negligence, trespass, inverse condemnation, restitution, nuisance, and violation of federal civil rights. These claims were based on allegations that the city had failed to build and maintain curbs on the McCormick property, failed to enforce against the McCormicks various provisions of the Portland City Code pertaining to curb construction, failed adequately to construct and maintain sewage and storm water management pipes on plaintiffs' property, and negligently mismanaged the storm water drainage system in the Southwest Council Crest Drive vicinity.

The McCormicks dismissed their claims before trial, at which point the court realigned the parties, making the Spadas plaintiffs against the McCormicks and the city as defendants. Jani McCormick was dismissed as a party

because her husband was the sole owner of the property, thus establishing the case as it appeared in Multnomah County Circuit Court: George and Marietta Spada, plaintiffs, against the City of Portland (city) and William McCormick, defendants. In the course of the trial, the court granted summary judgment against plaintiffs on the inverse condemnation, nuisance, and civil rights claims and directed a verdict against plaintiffs on the restitution claim. The negligence and trespass claims went to the jury, which found in favor of plaintiffs, apportioning 63 percent of the fault to the city and 37 percent to McCormick. The trial court, finding no just reason for delay, directed entry of an ORCP 67 B judgment awarding plaintiffs a total of $98,688 in damages: $62,173.44 (63 percent) against the city and $36,514.56 (37 percent) against McCormick. The judgment did not refer to the summary judgment orders or directed verdict order against plaintiffs on their other claims; it resolved only the trespass and negligence claims. After the notice of appeal was filed, plaintiffs and McCormick settled; the city is the sole respondent on appeal and the sole appellant on cross-appeal.

■    Plaintiffs' appeal contains eight assignments of error and one cross-assignment of error. Four of the assignments and the cross-assignment challenge the trial court's various summary judgment and directed verdict orders adverse to plaintiffs. Those rulings have not been reduced to judgment and are not appealable. ORS 19.205; ORCP 70 A; *City of Portland v. Carriage Inn*, 296 Or 191, 194, 673 P2d 531 (1983) ("order" not appealable); *Ensley v. Fitzwater*, 293 Or 158, 160, 645 P2d 1062 (1982).[1] The remaining assignments relate to the negligence and trespass claims and assert that the trial court should have awarded damages for loss in market value in addition to remediation costs, should have charged the city with all of the damages instead of a proportional share, should have awarded prejudgment interest, and should have awarded half the damages to each of the two

_____

[1] Under ORS 19.270(4), we have discretion to allow the trial court "to enter an appealable judgment" if we determine, among other things, that it intended to do so. That statute does not apply here. The trial court did enter an appealable judgment—an ORCP 67 B judgment. That appealable judgment did not adjudicate all of plaintiffs' claims, nor, the record makes clear, did the trial court intend it to do so.

plaintiffs. We agree with plaintiffs only as to the last assignment.

■　　In their first assignment of error, plaintiffs take issue with the trial court's decision to limit their award to repair costs. According to plaintiffs, the trial court should have awarded *both* repair costs *and* loss of fair market value or, if not both, then only fair market value.[2]

Plaintiffs' argument stems from the following portion of the special verdict form submitted by the jury:

"7.　What was the fair market value of the Spada property immediately before the slide? $<u>175,000</u>

"* * * * *

"9.　What is the present fair market value of the Spada property? $<u>0</u>

"10.　What is the cost of repairing the damage caused by the acts of the Defendants? (Do not include in this figure any amount the Spadas would have had to spend had the slide not occurred.) $<u>240,000</u>."

According to plaintiffs, those questions and answers demonstrate that the jury found that plaintiffs, at the time of trial, had already spent a significant amount of money to repair their property, but it remained worthless. Thus, they argue, to be restored to their pre-slide position, they need to recapture the out-of-pocket money already spent on repair *and* the full loss in market value.

Plaintiffs' theory has merit, however, only if the answer to question 10 refers to money that the plaintiffs had already spent at the time of trial and if the answers to questions 7 and 9 imply that the damage to property was permanent. In that case, we could infer that the jury found the property, once worth $175,000 (question 7), is and always will be worthless (question 9), despite expenses already incurred in a futile attempt to remedy the damage caused by defendants

---

[2] This is a generous reading of plaintiffs' brief. The "Assignment of Error No. 1" identifies the trial court's failure to award "additional damages" of $175,000, but the argument itself could be construed to contain the fall-back position that plaintiffs deserve $175,000 in lost market value damages *instead of* $98,688 in repair costs.

(question 10). If, however, the answer to question 10 refers to the total repair costs, past and future, necessary to restore the property to its pre-slide condition, then the answers to questions 7 and 9 do not mean that the property was destined to remain worthless forever, and plaintiffs' theory is untenable: at the conclusion of restoration funded by the money they receive for repair costs, they will have a lot worth $175,000 plus, as a windfall, the $175,000 they received for lost market value. The proper measure of damages for injury to property is that which will provide "just compensation without enrichment." *Millers Mut. Fire Ins. Co. v. Wildish Const. Co.*, 306 Or 102, 117, 758 P2d 836 (1988). Unless the answers to questions 7, 9, and 10 mean that the jury found plaintiffs had already spent a large sum of money in a futile attempt to restore their property's market value, then an award of repair costs and lost market value would be unjust enrichment.

That is not, in fact, what the jury intended. Had question 10 been phrased, "What *was* the cost" of repairing the damages defendants caused, we could infer that the amount referred to past damages. The question, however, asks, "What *is* the cost," which more logically would produce an answer referring to total costs. Further, plaintiffs themselves confirm that the jury's answer to question 10— "$240,000"—is a finding of total expenditures, derived from an engineer's testimony estimating "what the rational purchaser-developer and rational engineer *could* anticipate that they *might* have to expend in order to build on the lot." (Emphasis in original.)

Nor do the jury's answers to questions 7 and 9 establish that the damage to plaintiffs' property was permanent. One witness, as noted above, testified that the damage could be repaired for $240,000. Another testified that whatever stigma attached to the property due to the slide would dissipate in the future. Thus, the jury's answers more logically signify that, with a total expenditure of $240,000, plaintiffs could restore the property to its pre-slide value, despite the fact that, at the time of trial, it could not be sold at all.

The parties apparently recognized that the jury's answers did not establish that the damages were permanent, as indicated by the following exchange:

"[Plaintiffs' Counsel]:   And then finally, we were going to place on the record a stipulation * * * that *as regards to the permanence of the Spada lot damage,* if there are questions of fact needed for a decision beyond those provided for in the verdict forms furnished to the jury, the Court may make those findings.

"[City's Counsel]:   So stipulated.

"[McCormick's Counsel]:   So stipulated."

(Emphasis added.) Pursuant to the stipulation, the trial court made the following finding:

"[Court]:   So one of the questions I have to determine is whether or not this property has been damaged permanently, and there were a number of cases that the parties cite about—defining what permanent injury is, and *I do not find that this property has been permanently damaged because of the fact that this lot is a buildable lot.* It was intended to have a house built on it, and it is buildable, according to the expert's testimony.

"*Also, it is repairable,* and that again is based on all of the evidence that has been presented. So given the standard for what constitutes permanent injury or permanent damage, I don't find that this has been permanently damaged or injured in that sense."

(Emphasis added.) We must accept that finding if it is supported by any evidence. Or Const, Art VII (Amended), § 3; ORCP 62 F.

The testimony of plaintiffs' experts provides ample support for the trial court's finding that the damage to plaintiffs' property was not permanent, as that term is defined by Oregon law. The damage done to real property need not last "forever" to be considered permanent for purposes of damages; "It is enough that the injury be of a kind that makes it appropriate to consider the owner's loss in terms of the reduced value of the property rather than in terms of the cost of restoring it to its original condition." *Hudson v. Peavey Oil Company,* 279 Or 3, 10, 566 P2d 175 (1977). Damage may be classified as " 'permanent' in the sense that it [cannot] be repaired or rectified by any practical means, that it [is] likely to persist for an undetermined but significant period of time, and that the property's value to a prospective purchaser

would be significantly affected." *Id.* at 11. "Temporary" damage, on the other hand, is damage that is "reasonably susceptible to repair." *Id.* at 10.

Plaintiffs' expert prepared a document comparing the estimated costs of constructing a house foundation on the Spada property before and after the slide, with each house having the "same functional size and utility." That document supports the finding that plaintiffs' property after the landslide could be restored to its pre-landslide state, that is, that it was "reasonably susceptible to repair" by "practical means." *Id.* Further, as noted above, another witness testified that, over time, any stigma attaching to the land due to its geologic history would dissipate.

Thus, in sum, we reject plaintiffs' contention that they are entitled to repair costs and lost market value. The jury's findings, combined with facts stipulated by the parties, establish that, at the time of trial, defendants' lot, once worth $175,000, could be restored with a total expenditure (past and future) of $240,000, even though at the time of trial it had no market value at all. That being the case, plaintiffs cannot receive compensation for repair costs and lost market value.

Plaintiffs nonetheless contend that that analysis is wrong because the judgment awards them $98,688 for repair costs, not $240,000 as found by the jury. The lower number, however, resulted from a stipulation to which plaintiffs agreed. As the trial court accurately recited in the judgment:

> "Before the verdict was received and the jury discharged, there was an objection from the defendants to the jury finding of $240,000 for cost of repairs (question 10). After some discussion, [counsel for] plaintiff was asked if he had some disagreement to the defense motion to change that figure from $240,000 to $98,688 ('the proper number'). Counsel replied he had no disagreement with that proposal. With that stipulation, the Court received the verdict and discharged the jury."

On appeal, plaintiffs do not attempt to retract or otherwise negate their stipulation. We therefore conclude that the jury found plaintiffs would need to spend a total of $240,000 to restore their lot to its pre-slide value of $175,000. Plaintiffs'

counsel, apparently momentarily confused, agreed to reduce the amount of repair costs to $98,688. Perhaps he believed that the question referred to costs already incurred; evidence in the record indicates that at the time of trial, plaintiffs had spent that. That mistaken belief, however, has the effect of changing the *amount* of total repair costs; it cannot have the effect of retroactively converting the jury's intent to indicate total repair costs into an intent to indicate *already incurred* repair costs. Plaintiffs' argument that they deserve compensation for repair costs and loss of market value, therefore, must fail.

■ The question, then, is whether the trial court erred in awarding repair costs instead of lost market value. We agree with the city that the court did not err. Whether repair costs or lost market value is the more appropriate measure of damages depends on whether the harm to the property in question is permanent or temporary. *Hudson*, 279 Or at 10. When damage is temporary, a property owner's relief is more appropriately based upon the cost of restoring the property to its original condition; when the damage is permanent, lost market value is the appropriate measure. *Id.; see also Ore. Mutual Fire Ins. Co. v. Mathis*, 215 Or 218, 334 P2d 186 (1959). Whether the damages that plaintiffs incurred were temporary or permanent is a question for the factfinder. As we have already discussed, the parties agreed that the trial court would be the factfinder on that question, and it found the damages to be temporary. As there is evidence to support that finding, the trial court did not err in concluding that repair costs were the appropriate measure of damages.

■ Plaintiffs next assert that the trial court erred by allocating damages between the city and McCormick based on the percentage of fault that the jury attributed to each (63 percent to the city, 37 percent to McCormick) instead of entering judgment against the city for 100 percent of damages. We disagree.

ORS 18.485 alters the traditional rule of joint and several liability between tortfeasors. Subsection (1) of the statute provides that the "liability of each defendant for damages awarded to plaintiff shall be several only and shall not be joint"; subsection (2) requires that the court separately set

out damages against each defendant based on "the percentages of fault determined by the trier of fact * * *. The court shall calculate and state in the judgment a monetary amount reflecting the share of the obligation of each [defendant]." A plaintiff can recover full damages from one tortfeasor who is partially at fault only if the trial court concludes that judgment against the other tortfeasor is "uncollectible." ORS 18.485(3).

Plaintiffs do not argue that the judgment is uncollectible. Rather, they maintain that the several liability provision in ORS 18.485 does not apply because of two provisions in ORS 18.480:

"(1)   When requested by any party the trier of fact shall answer special questions indicating:

"* * * * *

"(b)   The degree of fault of each [defendant.]

"(2)   A jury shall be informed of the legal effect of its answer to the questions listed in subsection (1) of this section."

Plaintiffs maintain that, because no party requested special questions and the jury was not informed of the legal effect of its answers, the trial court erred in apportioning liability. That conclusion, however, would follow only if the requirements in ORS 18.480 are necessary predicates to the application of ORS 18.485. Plaintiffs offer nothing in support of that conclusion except a bare statement of it. Nor do they direct this court's attention to any portion of the record that alludes to that argument or to anything that could allow us to determine whether the asserted error was raised and preserved. ORAP 5.45(3), (4). Instead, under the heading "Preservation of Error," plaintiffs state, *in toto*:

"Spadas' pleadings, their requested instructions, and demanded verdict form sought the entire damages from the slide from the City without regard to percentage of fault. See Statement of Facts E and Rec. 1952-1955, 1961."

The referenced material does not contain any argument, analysis, or objections to trial court rulings. It does refer us to pleadings, requested instructions and verdict forms, as well

as to Statement of Facts A(vi) and (vii). That material, in turn, refers us to the same forms and pleadings, to the judgment, and to pages in the transcript whose relevance to this assignment we cannot discern. Plaintiffs, in other words, send us on an expedition through a maze of references and cross-references—a trail of bread crumbs—that never leads to anything from which we can infer the precise ruling to which they are objecting or, more significantly, anything from which we can infer that they presented the trial court with the arguments that they are presenting us on appeal. We are unwilling to comb through the 29 volumes of trial transcript or the 3,500-plus pages of written submissions in search of such material. ORAP 5.45(4)(C); *OTECC v. Co-Gen*, 168 Or App 466, 488, 7 P3d 594 (2000), *rev den*, 332 Or 137 (2001) (we "decline to go in search of a substantive argument" where party "sets forth no meaningful analysis"); *Resources Northwest, Inc. v. Crothers*, 153 Or App 24, 955 P2d 763 (1998).[3]

■　　Their third assignment of error asserts:

> "The court erred in failing to enter judgment awarding pre-judgment interest on the amount of the principal of the proper award. Interest should run from (a) the respective dates of expenditure for the past remediation costs and (b) the date of the landslide for the diminution in value."

We note preliminarily that our disposition of plaintiffs' first assignment of error renders moot any question of prejudgment interest for diminution of value; we have concluded that plaintiffs are entitled only to repair costs. Further, neither the jury's verdict form nor, more significantly, the trial court's judgment, specifies how much of the repair cost assessed against the city stems from expenditures that had already occurred at the time of the judgment. Thus, even if we were to conclude that plaintiffs were entitled to prejudgment interest, on the record before us we would not be able to determine the amount.

■　　We conclude, however, that plaintiffs are not entitled to prejudgment interest. "In an action at law, a party

---

[3] We also note that apportioning damages as the trial court did was not prejudicial to plaintiffs.

must plead specifically a foundation for prejudgment interest * * *." *Gardner v. Meiling,* 280 Or 665, 676, 572 P2d 1012 (1977); *see also Lithia Lumber Co. v. Lamb,* 250 Or 444, 447, 443 P2d 647 (1968). The only claims on which plaintiffs prevailed, negligence and trespass, are legal. Their pleadings on those claims, however, do not mention prejudgment interest, either directly or by implication. Plaintiffs point us to their demand for judgment "for economic damages for property damage and lost value for negligence, trespass and nuisance for the amount described in [plaintiffs' cross-claims] and subject to the valid limitations of ORS 18.440, 18.445 and 18.485 and ORS 30.270(1) and applicable law * * *." The cited statutes merely refer to the right of contribution amongst joint tortfeasors, ORS 18.440(1), the basis for proportional shares of tortfeasors, ORS 18.440(2), the Oregon rule on several liability, ORS 18.485, and the liability cap in actions against a public body or its officers, ORS 30.270(1). Plaintiffs also refer us to several prayers for prejudgment interest in the pleadings, but those references are made in conjunction only with plaintiffs' claim for restitution—a claim on which they have not prevailed. The trial court did not err in denying plaintiffs prejudgement interest.

■ Plaintiffs next assign error to the trial court's refusal to treat them as two claimants, each of whom is entitled to half of the total judgment against the city. That assignment overlaps with plaintiffs' response to the city's assertion on cross-appeal that the trial court should have reduced plaintiffs' judgment to $50,000 pursuant to ORS 30.270. Plaintiffs' theory is that, if the court had awarded each of them half the judgment against the city, they would each have received $31,086.72. Because ORS 30.070 limits the amount "any claimant" may receive from a public body for damage to property, plaintiffs argue, the statute would not apply to either of them. We agree with plaintiffs.

■ The trial court justified its refusal to individualize damages on the theory that the plaintiffs were tenants by the entireties and therefore neither owned a separate half interest: "The basis of my ruling [is] that because they owned the property as tenants by the entirety, they do not own each a half interest, but they each own the entire property under

Oregon law, together."[4] Language in some cases supports this conclusion. In *Wenker v. Landon et al.*, 161 Or 265, 270, 88 P2d 971 (1939), *overruled by Hargrove v. Taylor*, 236 Or 451, 389 P2d 36 (1964) (imposing a constructive trust on the estate of a murdering spouse) for example, the court—in the process of deciding that Oregon's "slayers' statute" did not deprive a husband who murdered his wife from taking real property that the couple held as tenants by the entireties—relied on the following definition from *Thompson on Real Property*, 1929 Supplement, § 1735:

> " 'An estate by entirety is * * * a peculiar and anomalous estate, *sui generis* in character. Estates by entirety have no moieties. *Each owner holds the entirety. Each receives per tout et non per my.* Such estates are creatures of the common law created by legal fiction and based wholly on the common-law doctrine that the husband and wife are one. And therefore there is but one estate and, in contemplation of law, but one person owning the whole.' * * * (Italics supplied.)"

A tenancy by the entireties cannot be partitioned through an action brought by husband, wife, or a third party. *Stanley, Admr. v. Mueller*, 222 Or 194, 209-10, 350 P2d 880 (1960). More recently, this court noted that "[a]n entirety estate consists of two interests in all of the entirety property, not two separate interests in divided halves of the property." *Wilde v. Mounts*, 95 Or App 522, 525, 769 P2d 802 (1989).

None of those passing references, however, directly addresses the issue in the present case. More relevant authority and reasoning point in the opposite direction. Oregon courts have long held, for example, that "the rents and profits of land owned by the entirety being personal property is the common property of the husband and wife, each owning a half thereof." *Ganoe v. Ohmart*, 121 Or 116, 125, 254 P 203 (1927); *accord Brownley v. Lincoln County*, 218 Or 7, 11, 343 P2d 529 (1959); *Oregon Account Systems, Inc. v. Greer*, 165 Or App 738, 746, 996 P2d 1025 (2000). That fact

---

[4] The trial court later expressed reservations about the correctness of the ruling, but did not reconsider because, having concluded that the damage cap did not apply, it found the question of separate damages moot.

follows from the enactment of the Married Women's Act, which "abolished the right of the husband to the exclusive enjoyment of the usufruct of an estate held by the entirety." *Ganoe*, 121 Or at 120. Similarly, when real property owned by tenants by the entireties is sold, each tenant is presumptively entitled to half of the proceeds. *Panushka v. Panushka*, 221 Or 145, 157, 349 P2d 450 (1960); *Marchand v. Marchand*, 137 Or 444, 449, 3 P2d 128 (1931). The proceeds from a tort action based on harm to real property, it appears to us, are more akin to rents, profits, and proceeds derived from the sale of real property than to the property itself.

■        Further, under well-settled case law, each plaintiff has an individual claim against the city. That is so because, unlike tenancy by the entireties in some other states, the estate in Oregon is for almost all purposes a species of tenancy in common. As early as 1927, the Oregon Supreme Court recognized that tenants by the entireties "can protect their interest [in rents and profits derived from their property] to the same extent and by the same remedies that they can in estates held in common[.]" *Ganoe*, 121 Or at 126. The distinctive feature of tenancy by the entireties—each individual owning the whole of the estate—derives from the old legal fiction that husband and wife are one person. *Wenker*, 161 Or at 270, *quoting Thompson on Real Property*, 1929 Supplement, § 1735. The Married Women's Act undermined that fiction, *Ganoe*, 121 Or at 120, and, as a result, Oregon's version of tenancy by the entireties is for many purposes a tenancy in common with an indestructible right of survivorship. *Brownley*, 218 Or at 10, *quoting 4 Powell on Real Property*, § 623, p 667. Each tenant in common has an individual right to bring an action concerning the commonly held property. *National Surety Corp. v. Smith*, 168 Or 265, 269-70, 114 P2d 118 (1941).[5]

It follows from the foregoing analysis that the trial court should have awarded each plaintiff $31,086.72. Had that occurred, no constitutional issue under ORS 30.270 would have arisen. That statute provides, in part:

---

[5] The city itself regarded each plaintiff as individually responsible for his or her share of remediation costs associated with the property. It would seem incongruous to treat liability, but not entitlement to repayment, as divisible.

"(1)   Liability of any public body * * * shall not exceed:

"(a)   $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.

"(b)   $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence * * *."

Both the Supreme Court and this court have held that the plain language of paragraph (b) means that the cap limits each claimant's award to $100,000, regardless of how many claimants might be associated in a single claim. In *Christensen v. Epley*, 287 Or 539, 548, 601 P2d 1216 (1979), a wrongful death action brought by the personal representative of an estate, the Supreme Court held that the damages cap in paragraph (b) applied not to the claim as a whole but to each of the real parties in interest: the widow and minor children. *Accord Neher v. Chartier*, 142 Or App 534, 542, 923 P2d 653, *rev den*, 324 Or 323 (1996) ("By its terms, the $100,000 special damages limitation in ORS 30.270(1)(b) applies to 'any claimant' and therefore limits the amount that each claimant may recover as special damages. That subsection does not address aggregate amounts * * *.").

The parallels to the present case are clear: here, too, the action is styled as a single claim brought by an "estate"—a tenancy by the entireties—but the real parties in interest are the estate's two cotenants. Further, the language the court construed from paragraph (b) ("to any claimant * * * for all other claims") is essentially identical to the language from paragraph (a) at issue here ("to any claimant for any number of claims"). The necessary conclusion following from *Christensen* and *Neher* is that, in the present case, regardless of whether plaintiffs constitute a single estate, each is subject to a separate limitation on damages, so that the appropriate limit under ORS 30.270(1)(a) is not $50,000 but $100,000. The trial court did not err in denying the city's motion to reduce the damages to $50,000, although it did so for a reason that we need not and do not review.

On appeal, judgment modified to award $31,086.72 each to George Spada and Marietta Spada; otherwise affirmed. On cross-appeal, affirmed.